**AMERICAN INDUSTRIES LIFE INSURANCE CO., Appellant,**

v.

**Jose RUVALCABA and Maribel Ruvalcaba, Individually and as Next Friends of Johnathan Ruvalcaba, A Minor, Appellees.**

No. 14–99–00077–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 20, 2001.

Concurring and Dissenting Opinions on Overruling of Second Rehearing Jan. 10, 2002.

Philip Robert Brinson, Houston, W. Wendell Hall, Renee Forinash McElhaney, San Antonio, for appellants.

Albert M. Hassler II, Richard P. Hogan, Houston, for appellees.

Panel consists of Justices ANDERSON, FOWLER, and EDELMAN.

## MAJORITY OPINION ON MOTION FOR REHEARING

ANDERSON, Justice.

We overrule appellees' motion for rehearing. We withdraw the opinion issued in this case on March 15, 2001, and we issue the following opinion in its place.

In this premises liability case, appellant American Industries Life Insurance Company ("American Industries") appeals from the trial court's judgment in favor of appellees and plaintiffs below, Jose Ruvalcaba and Maribel Ruvalcaba, individually and as next friends of Johnathan Ruvalcaba, a minor ("Ruvalcabas"). For the reasons stated below, we reverse the trial court's judgment and render judgment that the Ruvalcabas take nothing.

### Background and Procedural History

Jose Ruvalcaba worked at a private security company on the second floor of a two-story office building owned and managed by American Industries ("Building"). On March 7, 1996, Jose's wife, Maribel Ruvalcaba, and his two-year old son, Johnathan, paid a noon-hour visit to Jose's workplace for the purpose of taking him to lunch. This was the first time that Maribel or Johnathan had ever been up to the offices of Jose's employer. When they arrived, Jose was busy "discussing a few accounts" with his boss, and so Maribel decided to take Johnathan and wait in the car. On their way out, Maribel and Johnathan started to descend a staircase that had an "open" handrail that did not comport with the current City of Houston Building Code. Maribel testified that, while they were descending the staircase, Johnathan fell through the open bannister, landed on his head on the ground, and lost consciousness for about five minutes.

Johnathan's parents took him to the emergency room at Ben Taub Hospital. Johnathan's treating physician found no contusions, lacerations, or broken bones. Johnathan had an abrasion on his scalp. Johnathan's CT scan showed no abnormalities. Johnathan was kept overnight for observation and released the next day. At a follow-up visit one week after the incident, Jose reported that Johnathan's behavior had changed markedly since his fall.

A pediatric neurologist later examined Johnathan and concluded that he had suffered a traumatic brain injury from the fall, resulting in permanent damage. A pediatric psychologist specializing in lifecare planning estimated that, given the child's injuries and the behavioral problems caused by the fall, it would cost $1,800,000 to care for Johnathan over the course of his lifetime.

Jose and Maribel filed a personal injury suit, individually, and as next friends of their son, Johnathan, against American Industries. The Ruvalcabas alleged that Johnathan was an invitee at the time of the occurrence made the basis of this suit. The Ruvalcabas alleged that the open staircase in the Building constituted an "unreasonably unsafe condition" that American Industries had failed to make safe or warn them about. The Ruvalcabas claimed that American Industries was guilty of negligence, negligence *per se*, and gross negligence. The Ruvalcabas sought damages for Johnathan's past and future physical pain and suffering, mental and emotional anguish, medical expenses, loss of earnings, physical impairment, and loss of mental faculties proximately caused by American Industries' alleged negligence.

The parties agreed to a bench trial. The trial court granted American Industries' motion for directed verdict on the Ruvalcabas' allegation of gross negligence. The trial court found in favor of

the Ruvalcabas on their negligence[1] claim and signed a final judgment awarding Jose and Maribel as next friends of Johnathan $2,156,054.79[2] for future medical care,[3] $2,156,054.79 for past and future physical pain and mental anguish, $2,156,054.79 for past and future physical impairment, and $658,794.52 for future lost earning capacity. The trial court awarded Jose and Maribel $598,904.11 each for loss of filial consortium and an additional $59,890.41 to Maribel on her bystander claim. The total amount of the trial court's judgment was $8,384,657.52 plus post-judgment interest and costs of court.

The trial court issued findings of fact and conclusions of law. The trial court found, among other things, as follows: (1) that American Industries is liable to the Ruvalcabas as owner of the premises where the injury occurred; (2) that American Industries' negligence proximately caused Johnathan's injuries; (3) that American Industries' negligence liability results from a condition of which it was actually aware or had constructive notice before Johnathan was injured; (4) that American Industries' liability is based on a negligent activity or instrumentality on its premises; (5) in the alternative, that American Industries is liable because the Ruvalcabas were business invitees on the premises of American Industries and because American Industries breached its negligence duty to these business invitees; (6) that Maribel is entitled to recover under a bystander theory; and (7) that Maribel and Jose are both entitled to recover for loss of filial consortium based on Johnathan's injuries.

The trial court denied American Industries' Motion for Judgment as a Matter of Law, or in the alternative, Motion to Modi-

---

1. During trial, American Industries moved for a directed verdict as to the Ruvalcabas' negligence *per se* claim based on the violation of the Houston Building Code. American Industries pointed out that Section 102 of this code states that "the purpose of this Code is not to create or otherwise establish or designate any particular class or group of persons who will or should be especially protected or benefit by the terms of this code." American Industries asserted that negligence *per se* cannot apply as a matter of law because the unambiguous language of this building code shows that it was not designed to protect a particular class of persons from a particular type of harm. *See Mundy v. Pirie Slaughter Motor Co.*, 146 Tex. 314, 206 S.W.2d 587, 590 (1947). The trial court took this motion under advisement. A docket entry signed by the trial court shows that the court granted this motion for directed verdict as to negligence *per se* when it ruled in the Ruvalcabas' favor as to common-law negligence and damages. The trial court's findings of fact and conclusions of law did not mention the negligence *per se* theory, and, in their Appellees' Brief, the Ruvalcabas did not mention negligence *per se* as a reason for affirming the trial court's judgment. Although docket entries are not generally considered to be binding orders of the court, they are effective in certain circumstances and can be used to show the appellate court what occurred in the lower court. *Quaestor Investments, Inc. v. State of Chiapas*, 997 S.W.2d 226, 229 (Tex.1999); *N–S–W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex.1977) (orig.proceeding); *Knox v. Long*, 152 Tex. 291, 257 S.W.2d 289, 292–93 (1953), *overruled in part on other grounds, Jackson v. Hernandez*, 155 Tex. 249, 285 S.W.2d 184–91 (1955). Under these circumstances, there is no presumed finding of negligence *per se* under Tex.R. Civ. P. 299 because the record shows that the trial court's omission of negligence *per se* from its findings of fact was deliberate rather than inadvertent. *Burford v. Pounders*, 145 Tex. 460, 199 S.W.2d 141, 145 (1947); *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex.App.—Houston [14th Dist.] 1999, pet. denied).

2. All of the damage awards referenced in this paragraph include the amount of pre-judgment interest that was separately calculated and awarded in the judgment for each element of damages.

3. The Ruvalcabas did not seek damages for past medical expenses, and they do not appear to have incurred any medical expenses.

fy, Correct or Reform the Final Judgment. On appeal, American Industries argues, among other things, that there is no evidence of the following: (1) that Johnathan was an invitee; (2) that American Industries breached its duty to Johnathan; and (3) that Johnathan suffered any of the damages awarded by the trial court. American Industries also argues that Maribel and Jose may not recover under their filial consortium and bystander claims because Johnathan is not entitled to any recovery.

### Standard of Review

 In the issues that we rule on in this opinion, American Industries contends that there is no evidence to support the trial court's judgment in this case.[4] The trial court's findings of fact have the same force and dignity as a jury verdict, and this court reviews sufficiency challenges to findings of fact by the same standards that are applied in reviewing a jury's findings. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). When reviewing a no-evidence challenge, this court may consider only the evidence and reasonable inferences therefrom that support the challenged findings, and this court disregards all evidence and inferences to the contrary. *Texarkana Memorial Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 838 (Tex. 1997). This court may sustain a no-evidence challenge if the record reveals one of the following:

(1) the complete absence of a vital fact;

(2) the court is barred by rules of law or of evidence from giving weight to the

only evidence offered to prove a vital fact;

(3) the evidence offered to prove a vital fact is no more than a scintilla; or

(4) the evidence established conclusively the opposite of the vital fact.

*Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). When this court sustains a no-evidence point, it must render judgment for the appellant. *Vista Chevrolet, Inc. v. Lewis,* 709 S.W.2d 176 (Tex.1986).

### Is There Any Evidence of a Negligent Activity?

 The duty of an owner or occupier of land to keep the premises in a safe condition may subject the owner or occupier to liability in two situations: (1) those arising from a defect in the premises, and (2) those arising from an activity or instrumentality. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex.1985). To recover on a premises-defect theory, a person must have been injured by a condition on the property, rather than an activity or instrumentality. *See Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992). To recover for injuries sustained as a result of a negligent activity or instrumentality, the plaintiff must have been injured by or as a contemporaneous result of the defendant's activity or instrumentality rather than by a

---

4. At one point in its brief, American Industries argues that the trial court's finding that Johnathan was a business invitee is reviewed *de novo.* This is incorrect. While we review the trial court's determination of the existence and scope of a negligence duty *de novo,* we review determinations as to the factual predicate for an entrant's status as an invitee, license, or trespasser under the legal and/or factual sufficiency standards of review. American Industries seems to acknowledge this because it casts most of its argument in terms of the legal and/or factual sufficiency standards of review.

condition created thereby. *Keetch,* 845 S.W.2d at 264.

■ The trial court found that American Industries was liable, in part, under a negligent activity or instrumentality theory. On appeal, the Ruvalcabas do not defend this finding or cite any evidence in the record to support it. We have reviewed the entire record on appeal and applied the appropriate standard of review; however, we find no evidence to support the trial court's finding that Johnathan's injuries were caused by a contemporaneous activity or instrumentality of American Industries as opposed to a condition created thereby. *Keetch,* 845 S.W.2d at 264; *Wochner v. Johnson,* 875 S.W.2d 470, 473–74 (Tex.App.—Waco 1994, no writ) (no recovery under negligent activity theory because, as a matter of law, case involved condition of stairs rather than contemporaneous activity). There is no evidence in the record to support a recovery by the Ruvalcabas against American Industries under a negligent activity or instrumentality theory.

### Is There Any Evidence That Johnathan Was a Business Invitee?

In this case, the trial court also found that Johnathan and his mother were "business invitees" and that American Industries, as owner of the premises, breached its duty to Johnathan as a business invitee. In its first two issues, American Industries claims that the trial court erred because there is no evidence to support its finding that Johnathan was a business invitee.

■ Whether a duty exists is a threshold question of law for the court to decide from the facts surrounding the occurrence in question. *Thapar v. Zezulka,* 994 S.W.2d 635, 637 (Tex.1999). The duty owed by American Industries to Johnathan differs depending on whether, at the time of the accident, Johnathan was an invitee, a licensee, or a trespasser. *See Rosas v. Buddie's Food Store,* 518 S.W.2d 534, 536 (Tex.1975). An invitee is "one who enters on another's land with the owner's knowledge and for the mutual benefit of both."[5] *Rosas,* 518 S.W.2d at 536. A licensee enters and remains on the land with the owner's consent and for his own convenience or on business with someone other than the owner. *See Cowart v. Meeks,* 131 Tex. 36, 111 S.W.2d 1105, 1107 (1938). A trespasser enters another's property without any lawful authority, permission, or invitation. *Texas Louisiana Power Co. v. Webster,* 127 Tex. 126, 91 S.W.2d 302, 306 (1936).

■ An owner or occupier of land has a duty to use reasonable care to protect an invitee from conditions that create an unreasonable risk of harm of which the owner or occupier knows or by the exercise of reasonable care would discover. *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 101 (Tex.2000). However, the duty owed to a licensee is not to injure the licensee willfully, wantonly, or through gross negligence, and, in cases in which the owner or occupier has actual knowledge of a dangerous condition unknown to the licensee, to warn of or make safe the dangerous condition. *Lower Neches Valley Auth. v. Murphy,* 536 S.W.2d 561, 563 (Tex.1976). The only duty a premises owner or occupier owes to a trespasser is

---

**5.** The Texas Supreme Court has not adopted the "public invitee" concept of RESTATEMENT (SECOND) OF TORTS § 332(1) & (2)(1965). *See Rosas,* 518 S.W.2d at 536. The Texas Supreme Court has adopted a similar concept, however, by extending invitee status to members of the public who are invited into a store that sells goods and that is open to the public for the purpose of allowing them to inspect and/or buy the goods. *See* analysis of the Ruvalcabas' "public building" argument below.

not to cause injury willfully, wantonly, or through gross negligence. *Texas Utilities Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex.1997).

If Johnathan was an invitee on the day he visited Jose at work, then the Ruvalcabas had to show that American Industries knew or, by the exercise of reasonable care, should have known the staircase was an unreasonable risk of harm. *CMH Homes, Inc.*, 15 S.W.3d at 101. The trial court granted American Industries' motion for directed verdict because there was no evidence that American Industries acted intentionally or with gross negligence. Therefore, if Johnathan was a licensee, then the Ruvalcabas had to establish that American Industries had actual knowledge of a dangerous condition in order to recover. *State Dept. of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex.1992). If Johnathan was a trespasser, then the Ruvalcabas cannot recover because the trial court granted American Industries' motion for directed verdict and because the Ruvalcabas have not challenged that ruling on appeal. *See Texas Utilities Elec. Co.*, 947 S.W.2d at 193.

■■■ The general test for determining whether Maribel and Johnathan were invitees of American Industries is whether, at the time Johnathan was injured, they had present business relations with American Industries which would make their presence of mutual benefit to both them and to American Industries. *Olivier v. Snowden*, 426 S.W.2d 545, 550 (Tex.1968); *Cowart*, 111 S.W.2d at 1107. A person is an invitee only where the owner or occupier invites the person to enter the premises and where the person's visit involves at least a potential pecuniary profit to the owner or occupier. *Olivier*, 426 S.W.2d at 550.

■■■ American Industries maintains that there is legally insufficient evidence

that Johnathan and Maribel were invitees because there is no evidence that they were invited by American Industries to enter the premises or that there was any mutual benefit stemming from their visit. The Ruvalcabas do not cite any evidence in the record that American Industries invited Johnathan and Maribel to enter the premises or that there was a mutual benefit stemming from their visit. After considering all the evidence and reasonable inferences to support the challenged findings, and disregarding all inferences to the contrary, we hold that there is no evidence of any of the following at the time of the occurrence made the basis of this suit: (1) that Johnathan or his mother entered the Building at the invitation of American Industries; (2) that the presence of Johnathan and his mother in the Building was of mutual benefit to both the Ruvalcabas and to American Industries; or (3) that there was a potential pecuniary profit to American Industries associated with the visit of Johnathan and his mother to the Building. The evidence is thus legally insufficient to show that Johnathan and his mother are invitees. *See Knorpp v. Hale*, 981 S.W.2d 469, 472–73 (Tex.App.—Texarkana 1998, no pet.); *Prestwood v. Taylor*, 728 S.W.2d 455, 461–64 (Tex.App.—Austin 1987, writ ref'd n.r.e.); *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 933 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Mendez v. Knights of Columbus Hall*, 431 S.W.2d 29, 32 (Tex.Civ.App.—San Antonio 1968, no writ).

The Ruvalcabas do not seriously argue that Johnathan was an invitee under the traditional invitee analysis. The Ruvalcabas argue, however, that Johnathan is entitled to the equivalent of invitee status for the following reasons: (1) Johnathan should be treated as an invitee under RESTATEMENT (SECOND) OF TORTS § 360 (1965) and *Parker v. Highland Park, Inc.*, 565

S.W.2d 512 (Tex.1978) because he was the guest of a tenant; (2) Johnathan should be treated as an invitee because he was the child of a tenant; (3) Johnathan should be treated as an invitee because he was a visitor to a public building; and (4) Johnathan should be treated as an invitee because all young children are invitees in cases where the owner can reasonably expect young children to come onto the land.

## Is Johnathan an Invitee under RESTATEMENT (SECOND) OF TORTS § 360?

On appeal, the Ruvalcabas rely heavily on § 360. This section gives entrants onto property the equivalent of invitee status for premises-liability purposes under certain circumstances, even though these entrants would not be considered invitees under the traditional analysis in premises-liability cases. *See* § 360. The Ruvalcabas argue that the Texas Supreme Court adopted § 360 in *Parker* and that, under *Parker* and its progeny, Johnathan is an invitee. *See Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978). All of the cases cited by the Ruvalcabas in support of their § 360 argument are cases involving either apartment buildings or stores that are open to the public. *See Parker*, 565 S.W.2d at 514–515 (involving the guest of a tenant who fell down the apartment's unlit stairs); *Dickinson Arms-REO, L.P. v. Campbell*, 4 S.W.3d 333, 336 (Tex.App.—Houston [1st Dist.] 1999, pet. denied) (involving a tenant's boyfriend who was killed in the parking lot of her apartment); *Taylor v. Gilbert Gertner Enters.*, 466 S.W.2d 337, 341 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.) (involving an apartment complex laundry room); *McCrory Corp. v. Nacol*, 428 S.W.2d 414, 416 (Tex.App.—Beaumont 1968, writ ref'd n.r.e.) (involving injuries to a customer at a store open to the public). There is no evidence that the Building is an apartment complex or that the Building is a store where goods are offered for sale to the public. There is also no evidence that the general public is invited into the Building. The Ruvalcabas have not cited, and we have not found, any cases that extend *Parker* to an office building where there is no evidence that the building is held open to the general public ("Private Office Building"). We find no basis for extending *Parker* to a Private Office Building like the Building. On this ground alone, the Ruvalcabas' § 360 argument fails.

In the alternative, even if *Parker* and § 360 did apply to the Building, we hold that there is no evidence of the factual prerequisites for the application of § 360. This section gives entrants onto property the equivalent of invitee status if the plaintiff proves that the following factual prerequisites exist: (1) a possessor of land has leased a part of the premises; (2) the lessor has retained control over a part of the unleased premises that the lessee is entitled to use as appurtenant to the leasehold; (3) the entrants are injured by a dangerous condition on the part of the premises over which the lessor has retained control; (4) the entrants are either lessees or others lawfully on the premises with the consent of a lessee or a sublessee.[6] *See Parker*, 565 S.W.2d at 514–15; § 360.

---

[6.] Even before *Parker*, the Texas Supreme Court had established a similar principle for a property owner as to the business invitees of tenants who are selling goods at a store open to the public. *See Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 618 (1950). The rule under *Renfro* and its progeny includes all the elements of § 360 and adds the additional requirement that the entrants be invitees of the tenant and possibly that the lessor be obligated under the lease to keep that portion of the premises in good repair. Since the *Renfro* prerequisites are more demanding than those of § 360, we only discuss

The trial court's findings of fact do not address whether the Ruvalcabas proved these prerequisites at trial. The Ruvalcabas, however, assert that these findings are supplied by presumption under TEX.R. CIV. P. 299. *See Vickery v. Commission for Lawyer Discipline,* 5 S.W.3d 241, 252–53 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). Before this court can presume findings of fact in support of the trial court's judgment, the presumed findings must be supported by the evidence. TEX.R. CIV. P. 299; *Warren Petroleum Corp. v. Martin,* 153 Tex. 465, 271 S.W.2d 410, 412 (1954) ("The court cannot presume a finding unless the evidence supports such a finding"); *Vickery,* 5 S.W.3d at 252–53. Because there is no evidence to support presumed findings of the above prerequisites, we hold that these findings cannot be supplied by presumption under TEX.R. CIV. P. 299 and that the Ruvalcabas cannot use § 360 to support the trial court's judgment or to confer invitee status on Johnathan.[7]

The Ruvalcabas argue that they satisfied all of the § 360 prerequisites; however they do not cite evidence in the record that would support presumed findings as to these prerequisites. The Ruvalcabas claim that American Industries leased part of the Building to Jose's employer, that

American Industries retained control over the staircase in question, that Jose's employer was entitled to use the staircase as appurtenant to its leasehold, and that Johnathan was lawfully in the Building with the consent of Jose's employer. The Ruvalcabas, however, cite only three pages of the reporter's record in support of these assertions. In these pages, Jose Ruvalcaba testifies as follows: (1) in March of 1996, when this accident occurred, Jose was working for a security company with offices at 6006 Bellaire; (2) on March 7, 1996, Maribel and Johnathan came to see Jose around lunchtime; (3) when Maribel and Johnathan arrived at the office, Jose and the owner of the company, Maricio Garcia, were discussing a few accounts; (4) Maribel decided to wait for Jose in the car so she left while Jose was still in the office; (5) about two minutes later she returned, screaming and hysterical, with an unconscious Johnathan in her arms; (6) Garcia was standing next to Jose when Maribel returned; (7) a receptionist named Alma was also present when Maribel returned; (8) Johnathan had fallen through the stairwell; and (9) the situation was chaotic, and they rushed out. We have examined the three pages of the reporter's record cited by the Ruvalcabas as well as the rest of

the § 360 prerequisites; however, a substantially similar analysis and result would apply as to the *Renfro* prerequisites.

7. American Industries asserts, among other things, that there is no evidence to support the trial court's finding that Johnathan and Maribel were invitees. American Industries also asserts that there is no evidence that Johnathan and Maribel were in the Building with the consent of Jose's employer. American Industries does not expressly address whether this court should presume findings of fact under TEX.R. CIV. P. 299 or whether there is evidence to support presumed findings. American Industries has sufficiently assigned error by attacking the trial court's express findings. This court cannot presume findings

unless the evidence supports the presumed findings. TEX.R. CIV. P. 299; *Warren Petroleum Corp.,* 271 S.W.2d at 412; *Vickery,* 5 S.W.3d at 252–53. The rule that unchallenged findings are binding on the appellate court cannot apply to presumed findings under TEX.R. CIV. P. 299 because these findings do not exist until after the court has determined that they are supported by the evidence, in which case it is too late to challenge the evidence supporting them. When appellants have challenged the express findings to which potential presumed findings relate, we do not believe that appellants are required to explicitly argue against all potential presumed findings under TEX.R. CIV. P. 299.

the record, and we find that there is no evidence that the prerequisites of § 360 have been satisfied. There is no evidence in the record of any of the following: (1) that any lease existed between American Industries and any other party relating to any part of the Building; (2) that any lease relating to any part of the Building was entered into by Jose's employer; (3) that American Industries retained control over any part of the Building that a lessee is entitled to use as appurtenant to its leasehold; and (4) that Johnathan was a lessee of the Building or that he was lawfully on the premises with the consent of a lessee of the Building.

The Ruvalcabas claim that Johnathan was invited onto the premises by Jose's employer, that the owner of Jose's employer, Maricio Garcia knew that Johnathan and his mother were there and that there is no evidence that Garcia objected to their presence. However, both Jose and Maribel Ruvalcaba testified that Maribel and Johnathan had never been up to the offices of Jose's employer before the occurrence made the basis of this suit. Garcia did not testify, and there was no evidence that Jose's employer consented to Johnathan's visit to the premises. There was no evidence that Jose or his employer were expecting either Maribel or Johnathan to visit the premises on the day of the occurrence made the basis of this suit. While Jose did testify that he was talking to Garcia when his wife and son arrived at the office, there is no evidence that Garcia was aware that Johnathan was there until after Johnathan had already fallen and sustained his alleged injuries. We hold that, even if § 360 applied to a Private Office Building, there is no evidence to support presumed findings of the factual prerequisites for the application of § 360. Therefore, no findings as to the applicability of § 360 can be presumed, and § 360 cannot support the trial court's findings or

supply a basis for affirming the trial court's judgment.

## Is Johnathan an Invitee Because He is the Child of a Tenant?

The Ruvalcabas also assert that Johnathan is an invitee because he is the child of a tenant and because children of tenants are automatically considered to be invitees as to their parents' landlord. Both of these assertions are wrong. The Ruvalcabas do not cite any evidence in the record to support their assertion that Johnathan is the child of a tenant. There is evidence that Johnathan is the son of Maribel and Jose Ruvalcaba; however, there is no evidence that either Maribel or Jose is a tenant of American Industries. There is no evidence that Johnathan is the child of any tenant of American Industries. Further, the two cases cited by the Ruvalcabas do not support the proposition that children derive their premises liability status from their parents. *See Genell, Inc. v. Flynn,* 163 Tex. 632, 358 S.W.2d 543, 546 (1962) (indicating that child is an invitee in her own right rather than derivatively from her parents); *Huvar v. Rex Corp. of San Antonio,* 387 S.W.2d 82, 83 (Tex. App.—San Antonio 1965, no writ) ("Mrs. Huvar and her fifteen-year-old daughter, Sharon, were tenants of the Rex Apartments ... Sharon occupied the status of an invitee at the time of her fall"). There is no evidence that Johnathan is the child of a tenant, and even if he were the child of a tenant in the Building, this fact alone would not make Johnathan an invitee.

## Is Johnathan an Invitee Because He was a Visitor to a Public Building?

The Texas Supreme Court has not adopted the "public invitee" concept of Restatement (Second) of Torts § 332(1) & (2)(1965). *See Rosas v. Buddie's Food*

*Store,* 518 S.W.2d 534, 536 (Tex.1975). The Texas Supreme Court has adopted a similar concept, however, by extending invitee status to members of the public who are invited into a store that sells goods and that is open to members of the public for the purpose of allowing them to inspect and/or buy the goods. *Carlisle v. J. Weingarten, Inc.,* 137 Tex. 220, 152 S.W.2d 1073, 1075–76 (1941). The Ruvalcabas assert that Johnathan is an invitee under *Carlisle* and its progeny because the Building was open to the general public. The trial court made no findings that Johnathan or his mother were "public invitees" or that the factual predicate for the applicability of *Carlisle* and its progeny had been satisfied. *See Prestwood v. Taylor,* 728 S.W.2d 455, 457–58 (Tex.App.—Austin 1987, writ ref'd n.r.e.) (trial court's finding that plaintiff was a "business invitee" was not a finding that the plaintiff was a "public invitee.") The Ruvalcabas have not argued that any findings in this regard should be supplied by presumption under TEX.R. CIV. P. 299. In any event, before this court can presume findings of fact in support of the trial court's judgment, the presumed findings must be supported by the evidence. TEX.R. CIV. P. 299; *Warren Petroleum Corp.,* 271 S.W.2d at 412; *Vickery,* 5 S.W.3d at 252–53. Because there is no evidence to support presumed findings as to the *Carlisle* prerequisites, we hold that these findings cannot be supplied by presumption under TEX.R. CIV. P. 299 and that the Ruvalcabas cannot use *Carlisle* and its progeny to support the trial court's judgment or to confer invitee status on Johnathan.

In order to invoke the *Carlisle* rule, there must be evidence that American Industries invites members of the general public into the Building for the purpose of transacting business. *Carlisle,* 152 S.W.2d at 1075–76. The Carlisle court explained its reasoning as follows:

If one uses his premises for private purposes, he has no reason to expect visitors other than those especially invited by him; and hence is under no obligation to keep his premises in a safe condition for the protection of those who may enter thereon without his invitation. It may be more convenient for him and those who live and work thereon to allow the premises to remain in a condition that would be unsafe as to strangers. Under such circumstances, strangers having no business thereon of interest to the owner have no right to demand that such owner keep his premises in such condition that they may enter thereon in safety at their will. On the other hand, one who maintains a merchandise establishment, or other public place, to which, by reason of the business so conducted thereon, the public is impliedly invited to enter, necessarily expects visitors at all times. He knows that strangers may enter his place of business at any time, under the belief that, as members of the public, they have an implied invitation to so enter and inspect his merchandise, even though they do not then have a present intention to make a purchase.

*Carlisle,* 152 S.W.2d at 1075.

■ There is no evidence in the record that American Industries invites the general public into the Building for the purpose of transacting business. There is no evidence of any store in the Building that sells goods and that is open to the public for the purpose of allowing them to inspect and/or buy goods. Photographs in the record depict the Building owned by American Industries as a plain, two-story office building with no signs or advertisements on the exterior. There are no indicia of any invitation from American Industries to the general public. Both Jose and Maribel Ruvalcaba testified that Maribel and Johnathan had never been up to the

offices of Jose's employer before the occurrence made the basis of this suit. There is no evidence that members of the general public are allowed into the Building. Although there is a passing reference to the fact that Garcia's wife was in the office at the time of the occurrence made the basis of this suit, the record does not indicate whether she was there as an employee of Garcia's company or for some other purpose. In any event, the presence of Garcia's wife is no evidence that the Building is open to the general public. Where, as here, the premises owned by American Industries is not a retail establishment or other shop advertising that it is open to the general public for business, the element of invitation is absent, as is the presumption that the property owner is obligated to keep the premises in a safe condition suitable for the general public. *See, e.g., Prestwood,* 728 S.W.2d at 462 (explaining that the "distinctive hallmark of the requisite invitation is the possessor's desire that the visitor come onto the premises" and that "from this the law infers the possessor's representation that the premises are safe for the visitor's entry").

The cases relied on by the Ruvalcabas in their public building argument involve materially different facts from those in the record in this case. In *Carlisle,* the evidence showed that the building was used as a grocery store that was open to the general public, that it was customary for women to shop in the store accompanied by their young children, that the defendant did not object to this practice, that the plaintiff's mother and the plaintiff had been shopping in this manner for three years before the occurrence made the basis of the suit without objection from the defendant, and that the defendant knew that plaintiff had accompanied her mother into the store at the time of her injury. *Id.* at 1074–75. In *Renfro,* the evidence showed that the drugstore defendant invit-

ed the general public to use a passageway through its store as a shortcut, hoping that people who were passing through would stop to purchase items in the drugstore. *Renfro,* 235 S.W.2d at 616–17. Indeed, the alleged defective condition—the door into the drugstore—had an advertisement for the drugstore's prescription department on it, and the evidence showed that thousands of people used the passageway through the drugstore each month. *Id.* at 617.

To come under the *Carlisle* rule, the Ruvalcabas had to prove that American Industries invites the general public into the Building for the purpose of transacting business. The Ruvalcabas did not prove this. The record indicates that the Building is a Private Office Building in which a security company has offices. The evidence is legally insufficient to bring this case under the *Carlisle* rule. Therefore, no findings as to the applicability of *Carlisle* and its progeny can be presumed, and the *Carlisle* rule cannot support the trial court's findings or supply a basis for affirming the trial court's judgment.

### Is Johnathan an Invitee Because All Young Children Are Invitees If the Owner Can Reasonably Expect Young Children to Enter the Premises?

 The Ruvalcabas assert that Texas law has abolished the ordinary premises liability analysis as to young children and that all children are treated as invitees if the owner or occupier reasonably can expect that young children will come onto the land. The cases that the Ruvalcabas cite do not support this position. *See, e.g., Banker v. McLaughlin,* 146 Tex. 434, 208 S.W.2d 843 (1948); *Courtright v. Southern Compress & Warehouse Co.,* 299 S.W.2d 169 (Tex.Civ.App.—Galveston 1957, no writ). The traditional analysis for premises-liability cases still

applies to young children. *See, e.g., Texas Utilities Elec. Co. v. Timmons,* 947 S.W.2d 191, 193–94 (Tex.1997) (affirming summary judgment against plaintiff and holding that child was trespasser as a matter of law). It is true that, when all the elements of the attractive nuisance doctrine apply, the owner or occupier of the premises owes a child the same duty as an invitee. *Id.* at 193. However, the Ruvalcabas are not asserting an attractive nuisance claim. In any event, there were no pleadings, proof, or findings as to an attractive nuisance claim, and there is no evidence in the record that the staircase in question was an attractive nuisance.

## Was There Any Evidence of Negligence by American Industries?

As shown above, there is no legally sufficient evidence in the record that Johnathan was an invitee. Therefore, Johnathan was not an invitee as a matter of law and was either a licensee or a trespasser. In either event, there is no evidence that American Industries was negligent.

If Johnathan was a licensee, then American Industries was only obliged to avoid injuring him willfully, wantonly, or through gross negligence and to warn of or make safe dangerous conditions that American Industries knew about. *See Lower Neches Valley Auth. v. Murphy,* 536 S.W.2d 561, 563 (Tex.1976). If Johnathan was a trespasser, then American Industries' only duty was not to cause injury willfully, wantonly, or through gross negligence. *Texas Utilities Elec. Co.,* 947 S.W.2d at 193. As previously noted, the trial court found that that there was no evidence that American Industries acted willfully, wantonly, or with gross negligence. Therefore, if Johnathan was a licensee, then the Ruvalcabas had to prove that, on March 7, 1996, American Industries had actual knowledge that the staircase was a dangerous condition.

*See Payne,* 838 S.W.2d at 237; *State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974). If Johnathan was a trespasser, then there is no evidence of negligence as a matter of law because the trial court granted American Industries' motion for directed verdict and because there is no evidence of gross negligence or intentional conduct. *See Texas Utilities Elec. Co.,* 947 S.W.2d at 193.

Under the licensee analysis, the Ruvalcabas argue there is legally sufficient evidence that American Industries had actual knowledge of the dangerous condition of the staircase on March 7, 1996—at the time of the occurrence made the basis of this suit. The Ruvalcabas assert that the record contains the following evidence that supports this argument: (1) Baker, American Industries' vice president of real estate, works in the Building and has an office there; (2) American Industries owns the Building and four other buildings; (3) Baker manages three buildings for American Industries and manages buildings for other entities; (4) Baker keeps a copy of the Houston Building Code and the Uniform Building Code in his office; (5) Baker has been using the staircases in the Building for the past ten years; (6) Baker testified that he believes that the staircase was safe at the time of the occurrence; (7) however, Baker later had balusters installed in the staircase to comply with the building code, and he acknowledged that "there is the matter of the law"; and (8) Baker acknowledges that a prudent property owner complies with applicable building codes and keeps abreast of the codes.

In determining whether there is any evidence that American Industries had actual knowledge on March 7, 1996 that the staircase in question was a dangerous condition, we consider only the evidence and reasonable inferences therefrom that support this proposition. *Texarkana*

*Memorial Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 838 (Tex.1997). Unreasonable inferences do not constitute some evidence of American Industries' actual knowledge. *Hammerly Oaks, Inc. v., Edwards,* 958 S.W.2d 387, 392 (Tex.1997). Evidence of American Industries' actual knowledge cannot be established by piling inference upon inference. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex.1968); *accord Texas & N.O.R. Co. v. Burden,* 146 Tex. 109, 203 S.W.2d 522, 531 (1947) ("an inference may not be drawn from another inference").

■■■ Considering only the evidence favorable to the Ruvalcabas and the reasonable inferences therefrom, we find that there is no evidence that American Industries had actual knowledge that the staircase was a dangerous condition on March 7, 1996. The evidence cited by the Ruvalcabas may be some evidence that American Industries could have discovered the staircase was a dangerous condition or that American Industries, acting in a reasonable manner, would have discovered that the staircase was a dangerous condition. This evidence, however, is no evidence that American Industries had actual knowledge that the staircase was a dangerous condition at the time of the occurrence. In *Jefferson Associates, Ltd,* the Texas Supreme Court held that evidence Prudential should have known or should have suspected that there was asbestos in the Jefferson Building was no evidence that Prudential had actual knowledge of asbestos in that building. *See Prudential Ins. Co. of America v. Jefferson Associates, Ltd.,* 896 S.W.2d 156, 162 (Tex.1995).

Baker acknowledged that a prudent property owner complies with applicable building codes and keeps abreast of the codes. Robert Young—an expert witness for the Ruvalcabas—testified that the staircase was a flagrant code violation, that American Industries should have known that the stairs were not safe, and that an inspection by a safety examiner or engineer would have revealed that the staircase was a dangerous condition. However, there was no evidence that such an inspection was ever done. Baker testified that American Industries had not hired anyone to do any safety inspection of the Building before March 7, 1996. While there may be evidence in the record that American Industries could have discovered that the staircase was a dangerous condition or that it would have discovered this if it had acted reasonably, this is no evidence that American Industries had actual knowledge that the staircase was a dangerous condition on March 7, 1996. *See id; accord Kelly v. LIN Television of Texas, L.P.,* 27 S.W.3d 564, 572–73 (Tex.App.—Eastland 2000, pet. denied).

Further, evidence that American Industries knew of the existence of the staircase in question is not evidence that American Industries knew that the failure to have balusters was a dangerous condition. *Sipes v. Texas Dept. of Transp.,* 949 S.W.2d 516, 521 (Tex.App.—Texarkana 1997, writ denied); *Hastings v. De Leon,* 532 S.W.2d 147, 149 (Tex.App.—San Antonio 1975, writ ref'd n.r.e.). American Industries' installation of balusters after it became aware of the occurrence made the basis of this suit is no evidence that American Industries had actual knowledge that the staircase was a dangerous condition at the time of this occurrence. There is evidence that Baker works in the Building, that he has used these stairs many times, and that he keeps a copy of the Houston Building Code and the Uniform Building Code in his office. There is no evidence that, before March 7, 1996, Baker noticed the lack of balusters in the staircase in question. While Baker stated that he had

become familiar with the building codes applicable to the staircase after the occurrence made the basis of this suit, there is no evidence that, before March 7, 1996, Baker ever read or familiarized himself with the parts of the building codes in his office that pertain to the staircase in question. There is no evidence that Baker ever understood or realized that the staircase in question was a dangerous condition before March 7, 1996.

It might be reasonable to infer from the evidence that, before March 7, 1996, Baker noticed the lack of balusters in the staircase in question. However, we cannot reasonably infer from the evidence that, before March 7, 1996, Baker also knew and understood the building codes that apply to the staircase, that Baker realized that the staircase violated these codes, and that Baker knew that the staircase in question was a dangerous condition. The only way that we could conclude that there is any evidence of American Industries' actual knowledge would be by impermissibly piling inference upon inference. *See Schlumberger Well Surveying Corp.*, 435 S.W.2d at 858; *Texas & N.O.R. Co.*, 203 S.W.2d at 531. Therefore, considering only the evidence favorable to the Ruvalcabas and the reasonable inferences therefrom, we hold that there is no evidence that American Industries had actual knowledge that the staircase was a dangerous condition on March 7, 1996. *See Schlumberger Well Surveying Corp.*, 435 S.W.2d at 858; *Texas & N.O.R. Co.*, 203 S.W.2d at 531; *Kelly*, 27 S.W.3d at 572–73; *Sipes*, 949 S.W.2d at 521; *Pfeiffer v. Ebby Halliday Real Estate, Inc.*, 747 S.W.2d 887, 889–90 (Tex. App.—Dallas 1988, no writ); *Hastings*, 532 S.W.2d at 149.

■ While it is not evidence favorable to the trial court's finding, Baker testified that, before March 7, 1996, he was not aware that the staircase violated any applicable code and that he considered the staircase to be safe. Baker further testified that, before March 7, 1996, he was not aware of any reports of injury or complaints regarding staircases in any of American Industries' buildings. There was also evidence that the Building had passed a City of Houston building inspection as recently as November, 1994, and that no mention had ever been made about the staircase not being up to code. Although the trial court, as finder of fact, could disbelieve all of this evidence, the trial court's disbelief of this evidence is no evidence that the opposite is true or that American Industries had actual knowledge on March 7, 1996 that the staircase in question was a dangerous condition. *Texas & N.O.R. Co. v. Grace*, 144 Tex. 71, 188 S.W.2d 378, 380 (1945) (testimony from an interested witness, though disregarded by the jury, is not evidence that the opposite is true); *accord Castillo v. Neely's TBA Dealer Supply, Inc.*, 776 S.W.2d 290, 295 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

Because there is no evidence in the record that American Industries knew the staircase was a dangerous condition and because there is no evidence that Johnathan was an invitee, there is no evidence that American Industries breached its negligence duty, regardless of whether Johnathan was a licensee or a trespasser. *See Texas Utilities Elec. Co.*, 947 S.W.2d at 193; *Payne*, 838 S.W.2d at 237; *Tennison*, 509 S.W.2d at 562. Accordingly, American Industries' first two issues are sustained, and we reverse and render judgment that the Jose Ruvalcaba and Maribel Ruvalcaba take nothing against American Industries as next friends of Johnathan Ruvalcaba.

### Can Jose and Maribel Recover on Their Claims When Johnathan Takes Nothing?

■ The trial court awarded Jose and Maribel judgment on their loss of filial

consortium claims, and it also awarded Maribel judgment on her bystander claim. We do not reach the issue that has been raised by American Industries as to whether Texas recognizes claims for loss of filial consortium. If loss of filial consortium claims were recognized in Texas, they would be derivative of the child's personal injury claim and would be barred if the child has no recovery. *Krishnan v. Sepulveda*, 916 S.W.2d 478, 482 (Tex.1995). Although bystander claims are considered independent and not derivative, it is also true that the bystander plaintiff cannot recover unless the injured person can recover. *Estate of Barrera v. Rosamond Village Ltd. Partnership*, 983 S.W.2d 795, 799–800 (Tex.App.—Houston [14th Dist.] 1998, no pet.). We sustain American Industries argument under issues 11–15 that, because Johnathan has no recovery against American Industries as a matter of law, any filial consortium and bystander claims of Jose and Maribel also fail as a matter of law. *Krishnan*, 916 S.W.2d at 482; *Estate of Barrera*, 983 S.W.2d at 799–800.

### Conclusion

There is no evidence to support the trial court's findings of negligent activity, business invitee status, and breach of negligence duty by American Industries. We do not believe that RESTATEMENT (SECOND) OF TORTS § 360 (1965) applies to a Private Office Building. Even if it does, we conclude that there is no evidence of the following: (1) that Johnathan was injured by a negligent activity or instrumentality; (2) that Johnathan and Maribel were invitees; (3) that the factual prerequisites for the application of § 360 have been satisfied in this case; (4) that Johnathan was the child of a tenant; (5) that Johnathan was a visitor to a public building; and (6) that

American Industries breached its duty to Johnathan as either a licensee or a trespasser. We reject the Ruvalcabas' assertion that all young children are invitees in cases where the owner can reasonably expect young children to come onto the land. Any filial consortium[8] and bystander claims of Jose and Maribel fail as a matter of law because Johnathan takes nothing. We do not reach the other issues and arguments raised by American Industries because the issues already sustained support a reversal and rendition of judgment in favor of American Industries. Therefore, we reverse the judgment of the trial court and render judgment that the Ruvalcabas take nothing against American Industries.

FOWLER, J., concurring.

FOWLER, Justice, concurring on motion for rehearing.

This is a frustrating case. It is frustrating because it seems that the law should have had a different response to the case than it did. Our majority opinion detailed the tragic accident befalling young Jonathan Ruvalcaba and his family. In the trial following this accident, the trial court entered an $8,384,657.52 judgment in favor of the Ruvalcabas. However, because we are bound by a rigid premises liability system that does not provide a readily ascertainable classification for a plaintiff like Jonathan, and because the evidence presented in support of recovery under a premises liability theory was insufficient, we must reverse that judgment, and render one that the Ruvalcabas take nothing on their claim against American Industries Life Insurance Company.

I write separately to address what I think is the inadequacy of our system of establishing landowner liability, and to

---

**8.** We do not decide whether a claim for loss of filial consortium exists under Texas law.

comment on the Ruvalcabas' claim that the result in this case is unfair.

First, it is clear that the law applicable to the Ruvalcabas' appeal is that of a strict, unyielding, and rigid premises liability classification system. Under this system, the status of the entrant controls—that classification often matters more than what the land owner or occupier has done or failed to do, and more than the legitimacy of the visit. This system produces results that, at times, can be contrary to common sense.

When a plaintiff is a licensee, as Jonathan arguably is in this case,[9] the owner is negligent with respect to the condition of the premises if (1) the defendant has actual knowledge of the condition, (2) the condition is unreasonably dangerous, (3) the plaintiff did not have actual knowledge of the danger, and (4) the defendant failed to exercise ordinary care to protect the plaintiff from danger by failing to adequately warn the plaintiff of the condition, and by failing to make the condition reasonably safe. *State v. Williams*, 940 S.W.2d 583, 584 (Tex.1996) (per curiam). This heavy burden—of proving actual knowledge as opposed to a lesser burden such as constructive knowledge—does not seem to be one that more modern notions of responsibility would place on one who was in a building for a legitimate reason. After all, if Jonathan had been a businessman visiting the premises, American Industries would have been liable if it had possessed constructive knowledge, or should have known, of the dangerous condition. However, because Jonathan was only a child visiting his father who worked in the building, American Industries was liable only if it had actual knowledge of the dangerous condition.

A premises owner or occupier should not be strictly liable for conditions that result in injury, and should not be considered an insurer against all risk of injuries that others might sustain on its property. However, this case is a good example of the inadequacies in our current system of determining landowner liability. For example, here, the Ruvalcabas argued, and the trial judge agreed, that Jonathan was a business invitee. (The majority has already detailed why Jonathan was not an invitee—to start with, he wasn't there for a pecuniary visit that was mutually beneficial to him and the landowner.) Yet, I conclude that Jonathan is a licensee, not an invitee, because he was a social guest. And, although I say he is a licensee, I admit he isn't the typical licensee. Someone else might even argue that Jonathan was a trespasser. This confusion is not unusual. For when litigants test our premises liability system with new issues, the system is not flexible enough to encompass them; unless a person fits precisely under one of its categories, it can be

9. Although the trial court found Jonathan was a business invitee, Jonathan clearly was not visiting his father for a pecuniary purpose, which is required for one to be cloaked with business invitee status. Instead, Jonathan was visiting his father for a social reason—to share some time with him over lunch; regrettably, this reason warrants less protection.

In their motion for rehearing, the Ruvalcabas contend that Jonathan is treated by our opinion as a trespasser, and that, as a result, all people visiting office workers are treated as trespassers unless they can demonstrate that they had a present business relationship with the building owner. Jonathan is not classified as a trespasser in this opinion. The practical result may be that, as a licensee or trespasser, Jonathan cannot recover. But that in no way relegates social visitors to trespasser status. The proof in this case, as explained herein, cannot support recovery for a licensee-that does not mean that a licensee could never recover in this type of situation, just that Jonathan could not in this particular situation.

difficult to determine the appropriate classification for them.[10]

This uncertainty as to which classification applies creates problems for litigants and judges. Litigants have difficulty in determining what facts they need to prove to meet their burden. They have to make their best guess and hope they're right. Judges have trouble determining what classification applies. Consequently, one of several results will often occur: (1) judges can't agree how the categories should be applied, e.g., Mellon Mortgage Co., 5 S.W.3d 654 (Tex.1999), or (2) judges engage in mental acrobatics to fit the litigant into a category, or (3) judges apply the categories rigidly, as here, so that the plaintiff recovers nothing when, arguably, the system ought to impose a different duty on the land owner or occupier.

The reason this confusion or uncertainty results is that the system is not logic-based. Maybe centuries ago it was logical, because people were not as mobile as they are today, but, in our modern world, it is not logical. One who is looking at an event (other than a slip and fall) cannot determine, by relying on logic and general legal principles, whether liability will be imposed. Instead, one must put on blinders and apply this rigid system. This creates uncertainty in this area of the law; and, one of the responsibilities of the judiciary is to provide order, not uncertainty. This is reason enough to question the continued usefulness of applying the centuries-old common law premises liability classification system.

This brings me to the next point of discussion, one that formed part of the basis of the Ruvalcabas' complaint on rehearing—our holding that there was insufficient evidence to support a showing of actual knowledge. Although the Ruvalcabas complain mightily that they met their burden,[11] the evidence did not support a finding of actual knowledge. The building manager testified he was unaware of the danger posed by the stairs. In fact, he affirmatively stated that he did not think the stairs were dangerous. In support of this, he cited to the fact that no prior complaints about the stairs had been made, and no prior injuries had occurred on the stairs. No other evidence was produced to show that a reasonable person in the building manager's position would have realized that this accident, or some similar accident, was likely to occur. Although he agreed that a reasonable property manager would keep up with the city codes, the building manager testified that he was not familiar with them. Moreover, the record contains no evidence on (1) whether any families had ever visited the building before, (2) whether visitors ever came to the building, (3) whether the building manager ever had any children visit him or whether other children had used the stairs while with him there, or (4) whether the building manager had young children of his own.[12]

---

**10.** An excellent example of this problem is *Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654 (Tex.1999), which produced three opinions and interpretations of law for the plurality opinion and one dissent. Three of the opinions could not agree how the plaintiff should be classified, and one ignored the classifications altogether, presumably thinking it more logical to approach the case in a different way.

**11.** Of course, the burden the Ruvalcabas argued they needed to meet was a "should have known" standard, not an actual knowledge standard.

**12.** These examples pertain to the likelihood that the building manager might have reason to scrutinize the stairs with the safety of children in mind. The Ruvalcabas may already have known the answers to these questions but did not introduce them because the answers would not have been helpful to their case.

There simply is nothing in the record from which we could infer actual knowledge.

For these reasons, I join fully in the majority opinion but also write separately.

EDELMAN, J., concurring and FOWLER, J., dissenting on Second Motion for Rehearing.

RICHARD H. EDELMAN, Justice, concurring on second motion for rehearing.

The circumstances in which a possessor of land can be liable for injury resulting from a dangerous condition on the land vary according to whether liability is asserted against the possessor in its capacity as possessor or, if applicable, as lessor. *Compare* RESTATEMENT (SECOND) OF TORTS §§ 342 and 343 (1965) (liability of possessor to licensees and invitees, respectively), *with id.* § 360 (liability of possessor, who leases part but retains control over part which the lessee is entitled to use, to lessee and others lawfully on the land with the consent of the lessee). In this case, the trial court's findings of fact and conclusions of law contain liability findings and conclusions against American Industries based on its capacity as owner, *i.e.*, possessor of the office building. It does not contain any findings or conclusions against American Industries in its capacity as a lessor apart from those that are common to liability in its capacity as a possessor.

The judges on this panel are in agreement that the trial court's judgment cannot be affirmed based on liability against American Industries in its capacity as a mere possessor, *i.e.*, non-lessor, of the property because the evidence did not show that Johnathan was an invitee or that American Industries had actual knowledge of the dangerous condition, as required to impose liability in favor of a licensee. The disagreement arises among us concerning whether liability can be imposed against American Industries in its capacity as a lessor. In this regard, the former majority (now plurality) and dissenting opinions differ as to whether: (1) lessor liability applies to office buildings, as contrasted from other commercial properties, such as apartments and retail stores; and (2) whether the elements of lessor liability that were not included in the trial court's findings and conclusions were nevertheless supported by the evidence. Although I agree with the dissent's affirmative determinations on these two issues, I do not agree with it that lessor liability can be imposed on American Industries in this case based on a presumed finding of omitted elements.

A judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment. TEX.R. CIV. P. 299. Importantly, however, "[t]he rule that supplemental findings necessary to support the judgment are presumed, has no application when the findings and conclusions disclose the basis therefor, and that the court did not find such necessary supplemental facts,"[1] *i.e.*, the findings and conclusions show that no other findings were needed.[2] In other words, where "the trial-court judgment rests upon the specific grounds set out in the findings of fact and conclusions of law that accompany the judgment, we are not

1. *Burford v. Pounders*, 145 Tex. 460, 199 S.W.2d 141, 145 (1947).

2. *See generally* Frank W. Elliott, *Nonjury Trial, in* 4 TEXAS CIVIL PRACTICE § 20.13 n. 95 (1992 ed.).

permitted to assume omitted findings or conclusions necessary to any other grounds for the judgment." *Leonard v. Eskew*, 731 S.W.2d 124, 132 (Tex.App.-Austin 1987, writ ref'd n.r.e.).[3]

In this case, the trial court's findings and conclusions clearly disclose that liability was sought and found against American Industries solely on the basis of its capacity as possessor of the property, not its capacity as lessor (or otherwise). Therefore, the fact that the evidence might have also supported the remaining elements of lessor liability if it had been asserted or that the findings made on possessor liability happen to overlap with some of those needed for lessor liability does not authorize us to impose liability based on presumed omitted elements of lessor liability where the findings and conclusions disclose that the trial court instead imposed liability exclusively on possessor liability and thus neither needed, found, nor omitted any additional findings on the remaining elements of lessor liability. Accordingly, I concur in the overruling of appellees' second motion for rehearing.

WANDA McKEE FOWLER, Justice, dissenting on second motion for rehearing.

On the basis of the second motion for rehearing filed by appellee, Ruvalcaba, I withdraw my prior concurrence of September 20, 2001, and respectfully dissent from the majority opinion of this panel.

### Summary of Reason for Dissent

The facts of the case are well developed in the majority opinion so I will not repeat them here except where I disagree with

the majority's recitation of them. But, having said this, I want to set out at the beginning of my dissent the five factual conclusions that are paramount to my dissent. First, three year old Johnathan Ruvalcaba was severely injured on a visit to the building American Industries owned. Second, evidence in the record shows that Johnathan and his mother were welcome guests of the security company for which Johnathan's father worked. Third, American Industries leased part of the building to the security company. Fourth, American Industries retained control of the stairs where Johnathan fell. Finally, expert testimony showed that these stairs were the worst violation of the applicable codes that the expert had seen, that they should have been condemned, and that the property manager should have known (even though he said he did not know) that these stairs were dangerous. As I explain below, these five facts alone support the trial court's imposition of liability.

### Standard of Review

In every appeal, the standard of review is of paramount importance; in many, if not most, cases, it controls the outcome of the appeal. It is so in this case.

We are reviewing findings made by a trial judge at the conclusion of a bench trial. As the majority noted, the trial court's findings of fact have the same force and dignity as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). When we are reviewing a no evidence challenge, we are to disregard all evidence and reasonable inferences to the contrary. *Texarkana Memorial Hosp.*,

---

**3.** *See E.F. Hutton & Co. v. Fox*, 518 S.W.2d 849, 856 (Tex.Civ.App.-Dallas 1974, writ ref'd n.r.e.) ("no additional finding can be presumed because, as the court's conclusions of law show, the judgment is based on the findings recited."). Thus, rule 299 supplies omit- ted findings on the theory of recovery submitted, it does not supply additional findings on other, unsubmitted theories in order to overcome a lack of evidence to support the theory submitted.

*Inc. v. Murdock,* 946 S.W.2d 836, 838 (Tex. 1997). In addition, however, as we stated in *Vickery v. Commission for Lawyer Discipline,* when an attack is made upon a judgment, whether directly or collaterally, all presumptions consonant with reason are indulged to uphold the binding effect of such a judgment. *Vickery,* 5 S.W.3d 241, 252 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). In a case tried to a court without a jury in which the court enters findings of fact and conclusions of law, the reviewing court will indulge every reasonable presumption in favor of the findings and judgment of the trial court, and no presumption will be indulged against the validity of the judgment. *Id.*

When a court makes findings of fact, but inadvertently omits an essential element of a ground of recovery ..., the presumption of validity will supply the omitted element by implication. However, if the record demonstrates the trial judge deliberately omitted the element, the presumption is refuted and the element cannot logically be supplied by implication. Thus, when an essential element in support of the trial court's judgment is omitted from the court's findings, an issue is presented as to whether or not the omission was deliberate or inadvertent.

If a ground of recovery or defense is *entirely* omitted, i.e., if the trial court omits every element of the particular ground of recovery ..., this is some evidence the court did not rely on the ground ... in reaching its decision. In such case, the omission is deemed to be deliberate; "[t]he judgment may not be supported upon appeal by a presumed finding upon any ground of recovery ..., no element of which has been included in the findings of fact...."

However, where the court specifically finds one or more elements of a ground of recovery .... this fact constitutes some evidence the court relied upon the ground .... in reaching its decision. In such case, the omission of some of the elements of a ground of recovery ... is deemed to be inadvertent. Thus, *"when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment."*

*Vickery v. Commission for Lawyer Discipline,* 5 S.W.3d 241, 252–253 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) [citations omitted]; Tex.R. Civ. P. 299.

### The extent of § 360 of the Restatement (Second) of Torts

Having set forth the standard of review, I turn to what I consider to be the flaws in the majority opinion; they are both legal and factual. The first, and most major flaw is the majority's decision as to the breadth of the scope of § 360. Stating that it can find no case law applying § 360 to an office building, the majority concludes that § 360 may not be applied to an office building. The majority is reading § 360 too narrowly. In fact, we need look no further than § 360 itself to find our answer.

§ 360. Parts of Land Retained in Lessor's Control Which Lessee is Entitled to Use.

A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the

unreasonable risk involved therein and could have made the condition safe.

RESTATEMENT (SECOND) OF TORTS § 360. Although one might read this section and be uncertain of its breadth, the comment and illustrations make it clear how broadly the drafters wanted it to be.

**Comment:**

a. *Effect of Lessee's knowledge of dangerous condition.* The rule stated in this Section applies to subject the lessor to liability to third persons entering the land, irrespective of whether the lessee knows or does not know of the dangerous condition. The lessee may, for example, know that the common entrance to the apartment or *office* which he has leased has become dangerous.

. . . .

**Illustration:**

1. *A leases an office in an office building to B, an attorney.* C, a client of B, and D, coming to pay B a social visit are injured by the fall of the elevator while on their way up to B's office. B knows that the elevator is in dangerous condition because of A's negligence in failing to warn C or D. A is subject to liability to both C and D.

RESTATEMENT (SECOND) OF TORTS § 360 cmt. a, illus. 1 (1965). By its very language and illustration, § 360 applies to office buildings. Consequently, regardless of whether other cases have held that § 360 applies to office buildings, clearly it does.

### Reasonable inferences from the evidence

Having concluded that § 360 applies, the next question is whether the evidence or fact findings support its application. Again, I respectfully disagree with the majority and conclude that the evidence does support its application. I will review each element separately.

### 1. Was Johnathan on a legitimate visit to the building?

Unquestionably, the trial court found that Johnathan was on a legitimate visit to the building. She found that he was a business invitee. But, additionally, there are inferences we can make from the record that Johnathan was at least a guest. To begin with, Johnathan was with his mother meeting his father for lunch. His mother had been to the office and to the building lobby before on several occasions to have lunch with his father. We can make a reasonable inference from this testimony that Johnathan and his mother were welcome in the building at least to meet his father in his company's office. Moreover, no testimony reveals that they were unwelcome. Although Johnathan and his mother did not stay in the office after they arrived, they left only because Mr. Ruvalcaba was having a conversation with his employer and was not quite ready to leave.

### 2. Did American Industries Lease part of the building to the security company?

The next factual issue important to liability is whether the evidence showed that American Industries leased part of the building to the security company. The majority found against the Ruvalcabas on this issue. However, the reasonable inference from the record is that American Industries did lease to this company.

The vice-president of real estate of American Industries, Mr. Baker, testified that his family owned the stock of American Industries, which owned the building where Johnathan was injured. In fact,

Mr. Baker officed in the building and frequently used the stairs. He also testified that he was responsible for "manag[ing] real estate which involve[d] various details of *leasing to tenants, handling* complaints, *tenant complaints,* doing *tenant dunnings* and such." Apparently, Mr. Baker's job responsibilities dealt solely with tenants of American Industries's buildings. In short, there is no question that American Industries owned the building or that it leased space in its various office buildings.

Additionally, the only reasonable inference from the record is that American Industries leased space to the security company. When Mr. Ruvalcaba testified about Johnathan's fall, he spoke of Maricio, the owner of the security business he worked for; he also made it clear that Maricio was not the owner of the building. Clearly the security company was a separate company from American Industries. And, since part of American Industries' business was leasing office space to third parties, the only reasonable inference is that it leased space from American Industries.

### 3. Did American Industries retain control over these stairs?

The next factual issue over which I disagree with the majority is whether the evidence shows that American Industries retained control over these stairs. The unquestionable inference to make from the testimony is that it did retain control. Once again, the proof comes from the vice president of American Industries. He was asked many questions about these stairs, including whether he thought they were safe and whether they had passed any inspections by city inspectors. One of the questions asked of him was, "Have you

ever had any other complaints besides this one that someone was injured on your stairways?" His answer was "No"; he did not claim that the company was not responsible for the stairs or that he was not the appropriate person to receive complaints about stairs. In addition, the evidence clearly showed that these stairs were not within the sole control of the security company for Baker testified that he frequently used them. More importantly, Baker acknowledged that, after this accident, his company added balusters to the stairs so that the stairs would comply with the Houston building code. Again, the only reasonable inference to make from this evidence is that American Industries—not Mr. Ruvalcaba's employer—retained control of these stairs.

### D. Could American Industries, in the exercise of reasonable care, have made the condition safe?

The final element of § 360 that needed to have been proved at trial is that American Industries, had it exercised reasonable care, could have discovered the dangerous condition posed by these stairs and could have made them safe. Most recently the Supreme Court has stated the rule in this way: "A landowner owes invitees [1] a duty to exercise ordinary care to protect them from not only risks of which the landowner was actually aware, but also those risks of which the owner should be aware after reasonable inspection." *Motel 6 G.P., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex.1996).

Thus, the question in this case is whether American Industries was exercising ordinary care to protect its tenants from risks it reasonably should have discovered. Here, one might even ask if American Industries performed a reasonable inspec-

---

1. For purposes of § 360, Johnathan and his mother are owed the same duty as a landlord would owe an invitee.

tion. *Id.* It is not a subjective standard, but an objective standard, so the issue is not resolved by the claim of American Industries' vice president in charge of its real estate holdings, Ross Baker, that he didn't think the stairs were dangerous. *Id.* Nor is the issue whether any person—land owner or not—would have known of the dangerous condition; rather, we consider whether a reasonable landlord exercising ordinary care could have known of the danger.[2] Specifically, we consider whether American Industries, as a landlord owing a duty to protect its tenants and their guests, exercised ordinary care to make the stairs safe.

On this question, there are findings by the trial court and direct testimony. In two findings, the court found that American Industries knew about the condition, that the condition posed an unreasonable risk of harm, and that American Industries did not exercise reasonable care to reduce or eliminate the risk. The evidence supports these findings.

The Ruvalcaba's expert testified that the stairs were "inconsistent with and in violation of every city, state and federal promulgation of law related to stairs." In his opinion, "any professional engineer or architect who visited this particular stair would have been in the same amount of awe of faults and failures, extreme faults and failures and violations of the code that [he] was ...." The stairs violated the American Disabilities Act; the standards adopted by the American National Standards Institute (which, according to the expert, forms the basis of the Occupational Health and Safety Act); the Architectural Barriers Act adopted by the Texas state legislature; and the Uniform Building Code adopted by the City of Houston. As the expert testified, "[i]n all my 42 years of being a licensed architect, I do not believe I have seen a stair as flagrantly in violation of so many codes. It's so dangerous it should have been condemned."[3]

In contrast, the vice president in charge of American Industries' real estate holdings, Baker, disclaimed any knowledge of the stairs' deficiencies. Significantly, American Industries owned four buildings in which it leased space to tenants, and Baker devoted all of his time to dealing with the tenants in the company's four buildings. Baker also managed several other office buildings for other companies. Despite his responsibilities, Baker claimed that he was not involved with any trade groups pertaining to real estate management, he did not receive any trade journals on managing buildings, and he had not

**2.** Unlike a slip and fall case, where any adult knows that grapes are slippery on a floor, or that a soapy shower stall floor can cause someone to fall (e.g., *Motel 6 G.P., Inc.*, 929 S.W.2d at 3), not everyone knows the safety issues regarding stairs. Someone who owns an office building with stairs must have more knowledge than the average person on the street, or the owner must be willing to hire someone who knows about safety issues. He must act as any ordinarily prudent office building owner would act to avoid a dangerous condition. Put simply, he must perform a reasonable inspection of the stairs.

**3.** Apparently relying on this sort of testimony that the stairs were a blatant violation of the codes, American Industries argues that Johnathan should not recover because the defect in the stairs was open and obvious. The vice president testified that he did not think the stairs were dangerous and that the only reason the company made the changes to the stairs was so that they would comply with the codes, not because he thought they would be safer. American Industries cannot benefit from arguing both sides of the argument. It cannot say on the one hand that the stairs were not dangerous, but say on the other hand that Johnathan should not recover because the dangerous condition was open and obvious.

attended any seminars on safety or management of buildings. In addition, he testified that in the ten years American Industries had owned this building, not once had it hired a safety engineer to review the building.

In stark contrast, the Ruvalcaba's expert testified that a company doing business in a reasonably prudent manner examines a building on purchase to assess safety issues and code violations, and there are many professional safety engineers who will perform annual or bi-annual examinations of corporate properties to "keep the corporation aware of high-risk hazards to the tenants and invitee public." These safety engineers market their services to corporations. The expert, upon learning that Baker did not attend safety seminars, had not read the code, and had not hired a safety engineer, said that he was "shocked at [Baker's] indifference and his blatancy to be indifferent to public life safety in his buildings."

What is striking from the record is not necessarily Baker's complete lack of knowledge of any code relevant to his building, but his complete indifference to safety. Here is a man, as the expert put it, who is blatantly indifferent to safety. Based on his testimony, one might even say he was defiantly indifferent to safety.

Q. Did you ever walk up the stairs in the past ten years?

A. Oh, sure.

Q As a real estate manager experienced in real estate, did you believe that those stairwells were safe?

A. Oh, clearly, for anybody, yes clearly.

Q. You didn't feel it was unsafe that there weren't many upright balusters?

A. No.

Q. Are you familiar with building codes in the city of Houston now as regards to handrails on stairways?

A. Yes.

Q. And what do they require as far as upright balusters?

A. Specifically there is one section that talks about a sphere no larger than four-inch—four inches can pass between the bars.

Q. And do you know why they enacted that? Any idea?

A. Not specifically.

Q. Are you aware through your experience as real estate—in real estate management of there being a problem with small children falling underneath handrails, or even between upright balusters of stairs?

A. I can't imagine the occurrence.

* * *

Q Any of your brother or sisters have—have children of their own?

A. Yes.

Q. Okay. You ever hear about the terrible twos?

A. Yeah. That's a terminology.

Q. Did you ever see that firsthand?

A. Yeah. I guess children do act up.

* * *

Q. Do you believe that your stairways are safer now than they were prior to when you welded the upright balusters in?

A. Not really. However, there is the matter of the law.

Q. And a prudent property owner complies with the building codes in the state and the city, correct?

A. Yes.

Q. Prudent property owner keeps themselves abreast of that and doesn't wait for a citation or an order from the city to make a change, would you agree with that?

A. Oh, yes.

\* \* \*

Q. Do you think it's prudent for someone who manages real estate to belong to trade groups in order to get further educated on the—the area of management of real estate?

A. No.

Q. Don't feel any need to subscribe to any trade journals to sort of keep on the cutting edge or what's happening in the——in the management of real estate?

A. No.

In spite of Baker's denials, the clear testimony of the Ruvalcaba's expert was that an owner of office buildings who does not have knowledge of buildings himself hires someone who has that knowledge. Common sense would even support such a concept. And the testimony was also that any safety engineer or other person knowledgeable in the area, would have recognized the danger inherent in these stairs. In other words, if American Industries and Baker had been interested in learning whether there were any safety issues in their building, they would have learned about the hazardous condition. However, clearly, safety issues were not at the forefront or even in the background. Instead, Baker, whose sole job is to manage American Industries' properties, purposefully did not try to learn anything about safety in his buildings, and instead relied only on his own subjective thoughts about the stairs.

Under § 360, Baker was not necessarily required to know the code, although there is much testimony that he should have known about the code. Nor was he required to have as much knowledge as the experts. But, clearly, he was required to have enough knowledge so that he could protect his tenants and their guests from dangerous conditions. He was responsible for performing a reasonable inspection.[4] The Ruvalcaba's expert testified that there were ways to obtain the knowledge to learn about safety issues or to hire an engineer to perform an inspection for him. Yet, Baker did not avail himself of any of them. He relied instead on his own subjective belief. This was not enough.

In short, here we have a land owner that deliberately buried its head in the sand, and, in the ten years it owned this building, made no attempt to learn anything about the building's relative safety. There can be no question that such conduct violates § 360 and liabilities imposed by the Texas supreme court in *Parker*.

Moreover, there is no question that the record contains evidence to show that American Industries did not exercise reasonable care to discover the dangerous condition, that it could have learned about the condition but did not, and that it could have easily fixed the condition (since it did so after the accident) but did not.

### E. Summary

I would hold that sufficient evidence supports the application of § 360.[5] More-

---

**4.** In response to this statement, American Industries will point to the fact that, at one point, City of Houston inspectors inspected the building; however, on this no evidence appeal, we are to look only at the evidence in support of the trial court's judgment.

**5.** Much was made in the majority opinion that Johnathan was not a licensee. But, according to § 360, as long as Johnathan was at

least a guest, it doesn't matter how he was classified:

> c. A lessor may be liable to an invitee or even to a licensee of the lessee, although neither he nor the lessee would be liable under the same circumstances to their own invitees or licensees. The privilege of the visitor is not based, as is that of the lessor's own invitee or licensee, upon the consent given upon the occasion of the particular

over, since the trial court explicitly made two findings necessary to a judgment based on § 360, I would hold that the remaining findings are presumed.

visit, but upon the fact that he is entitled to enter by the right of the lessee, who is entitled under his lease to use the part of the land within the control of the lessor not only for himself, but also for the purpose of receiving any persons whom he chooses to admit. This fact is to be taken into account in determining whether the lessor should anticipate harm to the visitor. RESTATEMENT (SECOND) OF TORTS § 360 cmt. c (1965).