Affirmed and Opinion filed August 25, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00654-CV

___________________

 

Michael Taylor, Individually and as next
friend of Chloe Bleu Taylor, Austan William Taylor, and Tristan Michael Taylor,
Minor Children, Appellants

 

V.

 

Kelley Louis, Appellee



 



 

On
Appeal from the 400th District Court

Fort Bend County,
Texas



Trial Court Cause No. 08-CV-162514

 



 

 

OPINION

            In this personal-injury case, appellant
Michael Taylor, acting for himself and as next friend of his minor children,
sued his former girlfriend, premises owner Kelley Louis, for injuries he
received when he was assaulted in Kelley’s home by her ex-husband, Hal Louis.  Taylor
appeals the no-evidence summary judgment granted in Kelley’s favor, arguing
that he produced sufficient evidence to raise genuine issues of material fact
as to his premises-liability and negligent-activity theories of liability.  We
affirm.

I.  Background

            On December 26, 2006 appellant Michael
Taylor and his three minor children were guests at the home of Taylor’s
girlfriend, Kelley Louis.  Kelley’s three children were also at the home.  According
to Taylor, Kelley’s former husband, Hal Louis, called Kelley and asked to speak
to their son at about 8:00 a.m.  Kelley and Taylor were cooking breakfast at
that time, and Kelley told Hal she would have the child call him back.  Hal
became upset and hung up the telephone, and he subsequently called back and
began cursing at Kelley.  This time, Kelley hung up the telephone.  When Hal
called a third time, Kelley did not answer the telephone, but Hal left a
message that he was coming over to Kelley’s house.  

            At about 8:30 a.m., Kelley and Taylor
heard someone repeatedly ringing Kelley’s doorbell or knocking on her door.  The
children yelled, “It’s Hal.”  Taylor remained in the kitchen while Kelley
answered the door.  When Kelley opened the door, Hal forced his way into the
entryway of the house and refused Kelley’s repeated demands that he leave.  Hearing
this, Taylor walked into the entryway with his cell phone and said to Hal,
“I’ve heard Kelley ask you to leave at least four times.  You probably should
leave.”  Hal asked if Taylor was going to make him leave, and Taylor answered,
“No, but the police will.”  As soon as Taylor dialed 911—and in front of all
six minor children in the house, as well as a seventh child that Hal brought
with him—Hal attacked Taylor, choking him and attempting to gouge his eyes
out.  Hal broke off the assault and left before the police arrived.  Taylor was
taken by ambulance to the hospital.  He sustained a torn ligament in his right
knee, and he required plastic surgery to repair the lacerations to his eyelids.

            Fourteen months later, Taylor sued Kelley. 
He asserted premises-liability and negligent-activity theories of liability,
and sought general, special, and exemplary damages for himself.  On behalf of
his children, he sought damages for loss of parental consortium and for the
mental anguish they sustained from witnessing the assault.  

            Kelley moved for summary judgment on the
grounds there was no evidence that she owed the Taylors any duty, that she
breached any duty, or that any act or omission by her proximately caused the
Taylors’ injuries or damages.  The trial court granted Kelley’s motion without
stating the grounds for the ruling, and allowed Taylor’s motion for new trial
to be overruled by operation of law.  

II.  Issues Presented

            In seven overlapping issues, Taylor
argues that the trial court erred in granting Kelley’s summary-judgment
motion.  In his first issue, he argues that Kelley had a duty to warn or
protect her social guests from the criminal acts of a third party.  In his second
issue, he contends that the assault was foreseeable because Kelley “knew of Hal
Louis’s past dangerous propensities, steroid use, and anger issues, yet
continued to provoke and/or anger him and then opened a locked door allowing
Hal’s entrance into the home.”  Again citing Kelley’s alleged provocation of
Hal, Taylor asserts in his third issue that he was a foreseeable victim.  In
his fourth issue, he contends he produced more than a scintilla of evidence
that Kelley’s conduct was grossly negligent.  He asserts in his fifth issue
that Kelley failed to disprove that Hal’s assault was a superseding cause of
Taylor’s injuries.  In his sixth issue, Taylor contends that it was improper
for the trial court to grant summary judgment on the claims asserted under a
negligent-activity theory because Kelley did not argue in her motion that there
was no evidence of negligent activity.  Finally, Taylor argues in his seventh
issue that he produced evidence he was injured as a contemporaneous result of
Kelley’s negligence.  

III.  Standard
of Review

            We review
summary judgments de novo.  Ferguson v. Bldg. Materials Corp. of Am.,
295 S.W.3d 642, 644 (Tex. 2009) (per curiam) (citing Tex. Mun. Power Agency
v. Pub. Util. Comm’n of Tex., 253 S.W.3d 184, 192 (Tex. 2007)).  We
consider the summary-judgment record in the light most favorable to the
nonmovant, indulging every reasonable inference and resolving any doubts
against the movant.  See City of Keller v. Wilson, 168 S.W.3d 802, 823
(Tex. 2005).  We must affirm the summary judgment if any of the movant’s
theories presented to the trial court and preserved for appellate review are
meritorious.  Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 216 (Tex. 2003).  

            In a
no-evidence motion for summary judgment, the movant represents that there is no
evidence of one or more essential elements of the claims for which the
nonmovant bears the burden of proof at trial.  Tex. R. Civ. P. 166a(i); Timpte Indus., Inc. v. Gish,
286 S.W.3d 306, 310 (Tex. 2009).  The burden then shifts to the nonmovant to
present evidence raising a genuine issue of material fact as to the elements
specified in the motion.  Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572,
582 (Tex. 2006).  We review the evidence presented by the motion and response
in the light most favorable to the nonmovant, crediting evidence favorable to
that party if a reasonable juror could, and disregarding contrary evidence
unless a reasonable juror could not.  Id. (citing City of Keller,
168 S.W.3d at 827 and Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 208 (Tex. 2002)).  We sustain a no-evidence summary judgment when (a)
there is a complete absence of evidence of a vital fact, (b) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact
is no more than a mere scintilla, or (d) the evidence conclusively establishes
the opposite of the vital fact.  City of Keller, 168 S.W.3d at 810.  The
evidence is insufficient if “it is ‘so weak as to do no more than create a mere
surmise or suspicion’” that the challenged fact exists.  Akin, Gump,
Strauss, Hauer & Feld, L.L.P. v. Nat’l Dev. & Research Corp., 299
S.W.3d 106, 115 (Tex. 2009) (quoting Kroger Tex. L.P. v. Suberu, 216
S.W.3d 788, 793 (Tex. 2006)).  

IV.  Analysis

            Negligent activity and premises defect
are similar but distinct theories of recovery. See Clayton W. Williams, Jr.,
Inc. v. Olivo, 952 S.W.2d 523, 529 (Tex.1997); Mayer v. Willowbrook
Plaza L.P., 278 S.W.3d 901, 909 (Tex. App.—Houston [14th Dist.] 2009, no
pet.).  Negligent-activity claims commonly are based on affirmative contemporaneous
conduct by the owner while a premises-defect case is based on a failure to act—the
owner’s failure to take measures to make the property safe.  See Del Lago Partners,
Inc., v. Smith, 307 S.W. 3d 762, 776 (Tex. 2010).

Negligence consists of a
duty, a breach of duty, and damages proximately caused by the breach.  Western
Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).  The existence of
duty is a question of law for the court to decide from the facts surrounding
the incident.  Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523,
526 (Tex. 1990).  Courts determine whether a duty exists by examining factors
such as “the risk, foreseeability, the likelihood of injury, the social utility
of the actor’s conduct, the magnitude of the burden of guarding against the
injury,”[1]
the relationship between the parties,[2]
whether one party had superior knowledge of the risk,[3] whether that party
had the right and ability to control the actor whose conduct precipitated the
harm,[4]
and “any other relevant competing individual and societal interests implicated
by the facts of the case.”[5] 
The decision of whether to impose a common-law duty on a social host can be
particularly complex due to the “competing societal concerns and public policy
issues inherent in such a decision.”  Smith v. Merritt, 940 S.W.2d 602,
604–05 (Tex. 1997).  

            Premises liability is a special form of
negligence in which the premises owner’s duty generally is determined by the
plaintiff’s status as an invitee, licensee, or trespasser.  See Urena,
162 S.W.3d at 550.  Here, it is undisputed that Taylor and his children were
licensees on Kelley’s property.  

            A landowner has a duty not to injure a
licensee by willful, wanton, or grossly negligent conduct.  City of Dallas
v. Reed, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam).  If the landowner
has actual knowledge of a dangerous condition on the premises and the licensee
is unaware of the condition, then the landowner has the additional duty to use
ordinary care to either warn the licensee of the condition or make the
condition reasonably safe.  Id.  The licensee has the burden to plead
and prove that he did not actually know of the condition.  See County of
Cameron v. Brown, 80 S.W.3d 549, 558, 559 (Tex. 2002).  The landowner’s actual
knowledge usually is shown by evidence that the landowner received reports of
prior injuries or reports of the danger presented by the condition.  See Univ.
of Tex.-Pan Am. v. Aguilar, 251 S.W.3d 511, 513 (Tex. 2008).  It also can
be established by circumstantial evidence that directly or by reasonable
inference supports the conclusion that the landowner was actually aware of a
dangerous premises condition.  City of Corsicana v. Stewart, 249 S.W.3d
412, 415 (Tex. 2008) (per curiam) (citing State v. Gonzalez, 82 S.W.3d
322, 330 (Tex. 2002)).  But “actual knowledge” is not shown by evidence that
the landowner was aware that a dangerous condition could develop over time.  City
of Dallas v. Thompson, 210 S.W.3d 601, 603 (Tex. 2006) (per curiam).  With
regard to the criminal acts of third parties, courts consider not only whether
the general danger was foreseeable, but also whether it was foreseeable that
the danger would harm a particular plaintiff or one similarly situated.  Finley
v. U-Haul Co. of Ariz., 246 S.W.3d 185, 187 (Tex. App.—Houston [14th Dist.]
2007, no pet.). 

A.        Taylor’s
Allegations

            As the Texas Supreme Court has
recognized, “[t]he lines between negligent activity and premises liability are
sometimes unclear.”  Del Lago, 307 S.W.3d at 776.  Here, Taylor maintains
that Kelley was liable for his injuries because she committed the following
acts or omissions:

            1.         Kelley failed to provide gates or
locked doors;

            2.         Kelley failed to prevent the
problem;

            3.         Kelley also failed to warn Taylor
that Hal was coming over or that Hal had a propensity for violence; 

            4.         Kelley allowed Hal access to the premises;

            5.         Kelley angered Hal by not calling
her son to the phone when Hal first called, by hanging up on him when he called
back cursing her, and by failing to answer his subsequent calls; and

            6.         Kelley failed to prevent Hal from
coming to her residence.

Taylor did not associate any of these alleged acts or
omissions exclusively with a particular theory of liability.  In effect, he
contends that each act or omission supports liability under either a
negligent-activity or a premises-defect theory.  

            Although Taylor asserted in his petition
that he and his children “were injured by or as a contemporaneous result of
[Kelley’s] negligent activities as described,” most if not all of his
allegations are best described as raising a premises-defect claim because
Taylor has alleged that Kelley failed to take certain measures to keep the
property safe.  Del Lago, 307 S.W. 3d at 776.  The gravamen of his
complaint is that Kelley, despite her knowledge of an unreasonable risk of
harm, caused or permitted an angry, violent person to enter the premises and
assault Taylor.  Allegations that a premises owner failed to prevent or warn of
the risk of criminal assault generally are treated as presenting a
premises-defect claim.  See Timberwalk Apartments, Partners, Inc. v. Cain,
972 S.W.2d 749, 753 (Tex. 1998) (explaining that only a premises-defect claim
was presented where the plaintiff alleged that the landowner provided
inadequate security and the only activity that injured the plaintiff was a
third party’s criminal conduct).  We therefore begin by addressing this theory
of liability.

B.        Premises Defect

            Property
owners owe a duty to those who may be harmed by the criminal activities of
others on their property only if the “injury is of such a general character as
might reasonably be anticipated” and the injured party is “so situated with
relation to the wrongful act that injury to him or to one similarly situated
might reasonably have been foreseen.”  Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 551 (Tex. 1985) (quoting Carey v. Pure Distrib. Corp.,
133 Tex. 31, 35, 124 S.W.2d 847, 849 (1939)).  Thus, we evaluate foreseeability
by considering both the foreseeability of the particular criminal conduct and
the foreseeability that the plaintiff or one similarly situated would be
harmed.  Diaz v. DTC W. Tidwell Corp., No. 14-08-00402-CV, 2009 WL
3210617, at *2 (Tex. App.—Houston [14th Dist.] Oct. 8, 2009, no pet.) (mem.
op.).  

            Unless the
premises owner has “direct knowledge that criminal conduct is imminent,” we
evaluate the foreseeability of criminal conduct by considering “whether any
criminal conduct previously occurred on or near the property, how recently it
occurred, how often it occurred, how similar the conduct was to the conduct on the
property, and what publicity was given the occurrences to indicate that the
landowner knew or should have known about them.”  Timberwalk, 972 S.W.2d
at 757.  These are frequently referred to as the “Timberwalk factors” of
“proximity, recency, frequency, similarity, and publicity.”  Del Lago,
307 S.W.3d at 768.  

            Taylor,
however, maintains that the Timberwalk factors do not apply, and that
this instead is a case in which “the premises owner has actual and direct
knowledge that criminal conduct is imminent based on her conduct immediately
preceding the assault and her past knowledge of, and experiences with, the
criminal actor.”  In making this argument, he relies on Del Lago Partners,
Inc. v. Smith.  

            In Del
Lago, the plaintiff was seriously injured in a bar fight at closing time
“following ninety minutes of heated altercations among intoxicated patrons.”  Id.
at 768.  The brawl involved “twenty to forty ‘very intoxicated’ customers’”
in two rival groups, and although the groups had been threatening, cursing, and
shoving one another for an hour and a half, the premises owner did not call its
security personnel, who were patrolling other parts of the property.  Id. at
764.  Moreover, the bar staff not only continued serving alcohol to the hostile
groups, but kept the bar open for an extra half-hour to do so.  Id. at
772.  

            On these
facts, the Supreme Court of Texas held that the bar’s owner had a duty to
protect the plaintiff because it had (a) “actual and direct knowledge” that
violence was imminent, and (b) “ample time and means to defuse the situation.” 
Id. at 769.  The court determined that the premises owner knew that
violence was imminent based on the nature and character of the premises, as
well as the participants’ immediately preceding conduct.  Id. at 768–69. 
As to the nature and character of the premises, the court emphasized that the
Del Lago is a 300-acre resort.  Id. at 765.  “Like any similar facility,
it recognized the need to provide private security throughout the resort.  It
did so through a trained security force.”  Id. at 770.  As many as six
security personnel patrolled the premises at any given time.  Id. at
765.  The assault occurred at the bar, and the court pointed out that, “as
common sense dictates, intoxication is often associated with aggressive
behavior.”  Id. at 768.  As to the second factor, i.e., the
participants’ immediately preceding conduct, the premises owners “observed—but
did nothing to reduce—an hour and a half of verbal and physical hostility in
the bar” but “continued to serve drunk rivals who were engaged in repeated and
aggressive confrontations.”  Id. at 769.  

            The court also
evaluated the burden in imposing a duty on the premises owner to act.  In doing
so, the court was careful to point out that “the risk arose in circumstances
where the property owner had readily available opportunities to reduce it.”  Id.
at 770.  But “[i]nstead of calling security, asking patrons to leave, or
otherwise bringing the situation under control, the bar staff continued to
serve drinks.”  Id. at 772.  Finally, the court disposed of the argument
that the premises owner had no duty to warn of a danger that was open and
obvious by pointing out that the plaintiff was an invitee, and the premises
owner is liable to an invitee for injuries from danger of which he is aware if
“the possessor should anticipate the harm despite such knowledge or
obviousness.”  Id. at 773–774 & n.37 (quoting Restatement (Second) of Torts § 343A(1)
(1965) and emphasizing that the plaintiff was an invitee to whom that section
applies).  

            The facts in
this case bear no resemblance to Del Lago.  Here, the assault took place
without warning in a private home on the morning after Christmas in front of
seven children.  There is no evidence that Hal was intoxicated;[6] Taylor was not an
invitee; the attack was not preceded by an extended period of threatening and
aggressive behavior; there is no evidence that Kelley had “ample time and means
to defuse the situation”; there is no evidence that Kelley did anything to
exacerbate the tensions between Hal and Taylor; and Kelley—unlike the premises
owner in Del Lago—repeatedly told the belligerent actor to leave.   

            Taylor
asserts that Kelley was aware of Hal’s “propensity for violence,” and thus, it
was foreseeable to her that Hal would assault Taylor.  Foreseeability usually
is determined by whether the defendant is aware of prior, similar conduct by
third parties.  Sanders v. Herold, 217 S.W.3d 11, 17 (Tex. App.—Houston
[1st Dist.] 2006, no pet.) (collecting cases that show similar crimes against
similar victims).  But the summary-judgment evidence shows only that in the
course of their seven-year marriage, Hal committed one act of family violence
against Kelley at a different location, and two acts of family violence against
her at the address where Taylor was assaulted.  Specifically, Hal choked Kelley
in 2003 while Kelley and Hal were living in Houston.  She pressed charges, and
Hal was sentenced to one year of probation based on his deferred adjudication
of guilt.  In December 2005, while the couple were living in Missouri City, Hal
grabbed Kelley’s wrists and would not let her go, and in March 2006, Hal pushed
Kelley across a closet.  She again pressed charges, and the couple were
divorced in May 2006.  

            Kelley’s
knowledge of Hal’s history of family violence does not make it foreseeable to
her that Hal would assault Taylor in her home.  Isolated instances of domestic
violence between residents do not indicate an unreasonable risk of assault
between unrelated nonresidents on the property.  See, e.g., Timberwalk,
972 S.W.2d at 758 (pointing out that “a spate of domestic violence in the
complex does not portend third party sexual assaults or robberies”); Tex.
Real Estate Holdings, Inc. v. Quach, 95 S.W.3d 395, 400 (Tex. App.—Houston
[1st Dist.] 2002, pet. denied) (explaining that a carjacking was unforeseeable
where in the preceding two years, “there was no violent crime in the complex,
save one domestic assault between relatives”).  There is no evidence of any
further acts of family violence after their divorce, and no evidence that
Kelley knew Hal threatened or assaulted anyone else during or after their
marriage until he attacked Taylor in December 2006.  The risk that Taylor would
be assaulted at Kelley’s home was not foreseeable.  

            Finally,
Taylor argues that Kelley “created a dangerous situation” because she “angered
an already violent man” by refusing to call her son to the telephone, hung up
the telephone when Hal cursed at her, and did not answer his subsequent phone
calls.  Because he did not argue in the trial court that Kelley “created” the
dangerous condition, we may not consider that argument on appeal.  See Tex. R. Civ. P. 166a(c) (“Issues not
expressly presented to the trial court by written motion, answer or other
response shall not be considered on appeal as grounds for reversal.”).

            We therefore
overrule Taylor’s first, second, third, and fourth issues.  

C. 
Negligent Activity

            After Kelley
filed the no-evidence motion for summary judgment, Taylor amended his petition
to add a negligent-activity theory of liability.  He contends on appeal that
Kelley did not challenge any element of this liability theory.  But as
previously discussed, Kelley moved for summary judgment on the grounds that
there was no evidence that she owed a duty, breached a duty, or proximately
caused any of the Taylors’ damages.  Duty, breach, and proximate cause are
elements of negligent-activity claims just as they are elements of a premises-defect
claim.  This motion encompassed both causes of action.  See Lampasas v.
Spring Ctr.,Inc., 988 S.W. 2d 428, 436–37 (Tex. App.—Houston [14th Dist.]
1999, no writ).  We overrule Taylor’s sixth issue.

            On appeal, Taylor does not address the
elements of duty or breach in connection with his negligent-activity theory. 
He contends only that summary judgment was improper as to his
negligent-activity theory of liability because he was injured as a
contemporaneous result of Kelley’s negligent activity in “antagonizing” Hal by
demanding that he leave her house.  See Keetch v. Kroger Co., 845
S.W.2d 262, 264 (Tex. 1992) (“Recovery on a negligent activity theory requires that
the person have been injured by or as a contemporaneous result of the activity
itself rather than by a condition created by the activity.”).  While Taylor
makes that argument, he presented no evidence that Kelley’s actions proximately
caused Hal to act violently.  It was not until Taylor entered the hallway, told
Hal to leave, and started to call 911 that Hal became violent.  Cf. Urena,
162 S.W.3d at 551–52 (affirming no-evidence summary judgment in a
negligent-activity/premises-defect criminal-activity case based on absence of
evidence of causation).  Moreover, Kelley could have breached no duty to Taylor
by telling Hal to leave her home.  Cf. Del Lago, 307 S.W.3d at 772
(holding that premises owner breached duty to invitees by, inter alia,
failing to ask aggressive patrons to leave).  Thus, we overrule Taylor’s
seventh issue.

V.  Conclusion

            One who
controls premises does not thereby insure that those on the premises will not
become the victim of a crime.  See Trammell Crow Cent. Tex., Ltd. v. Gutierrez,
267 S.W.3d 9, 17 (Tex. 2008).  Because Taylor produced less than a scintilla of
evidence to support foreseeability or proximate cause, the trial court properly
granted summary judgment as to his claims.  And because Taylor cannot recover,
his children cannot recover on their bystander and loss-of-consortium claims.  See
Am. Indus. Life Ins. Co. v. Ruvalcaba, 64 S.W.3d 126, 144
(Tex. App.—Houston [14th Dist.] 2001, pet. denied).  We therefore affirm the
trial court’s judgment without addressing Taylor’s remaining issue.

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

 

Panel consists of Justices
Anderson, Brown, and Christopher.









[1] Id. (citing El
Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987), superseded by
statute on other grounds).





[2] Tex. Home Mgmt., Inc.
v. Peavy, 89 S.W.3d 30, 33 (Tex. 2002).





[3] Graff v. Beard,
858 S.W.2d 918, 920 (Tex. 1993).





[4] Tex. Home Mgmt., Inc.,
89 S.W.3d at 38 (“[W]e must analyze foreseeability in terms of the known danger
and the ability to control the third party’s conduct.”); Graff, 858
S.W.2d at 920 (noting that courts also consider the “right to control the actor
whose conduct precipitated the harm”).





[5] Tex. Home Mgmt., Inc.,
89 S.W.3d at 33.





[6] Taylor points out that
according to Kelley, Hal used steroids and marijuana during their marriage. 
There is no evidence, however, that Hal was under the influence of any
substance at the time of the assault, or that any substance played a role in
the attack.