Opinion issued December 29, 2020



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00158-CV

———————————

## MARY LOU LUJAN, Appellant

## V.

## THE METHODIST HOSPITAL, INDIVIDUALLY AND D/B/A HOUSTON METHODIST HOSPITAL, AND HOUSTON METHODIST HOSPITAL, Appellees

---

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2018-00398

---

## MEMORANDUM OPINION

Appellant, Mary Lou Lujan, challenges the trial court's rendition of summary judgment in favor of appellees, The Methodist Hospital, individually and doing business as Houston Methodist Hospital, and Houston Methodist Hospital

(collectively, "Houston Methodist"), in her suit against Houston Methodist for premises liability and negligence. In her sole issue, Lujan contends that the trial court erred in granting Houston Methodist summary judgment.

We affirm.

## Background

In her second amended petition, Lujan alleged that in June 2016, she visited her brother, a patient who had just undergone heart surgery, at Houston Methodist. While walking to her brother's room, she "slipped and fell in [a] public hallway" because of "a puddle of water which had been left uncleaned by the employees and/or the contractors of" Houston Methodist.

Lujan further alleged that the accident was proximately caused by the negligence of Houston Methodist,[1] Houston Methodist had actual and constructive knowledge of the condition that caused Lujan's fall, and Lujan had been exercising due care for her own safety. Lujan, as a result of the accident, suffered severe personal injuries. Lujan brought claims against Houston Methodist for premises liability and negligence and sought damages for medical expenses, physical pain, mental anguish, disfigurement, and impairment.

---

[1] Lujan alleged that Houston Methodist was negligent failing to inspect public areas to insure that they were free from hazards, failing to maintain proper equipment, failing to properly clean public areas, failing to warn invitees and guests of hazards, and failing to prevent the creation of artificial hazards in the public spaces of the hospital.

2

Houston Methodist answered, generally denying the allegations in Lujan's petition and asserting certain affirmative defenses.

Houston Methodist then moved for summary judgment, asserting that it was entitled to judgment as a matter of law on Lujan's premises liability and negligence claims. According to Houston Methodist, there was no evidence that the hospital knew of the existence of the liquid on which Lujan slipped and fell. And Lujan could not establish that the hospital had actual knowledge or constructive knowledge of the dangerous condition that caused Lujan's purported injuries. Houston Methodist attached certain exhibits to its motion, including the deposition testimony of Lujan and Mohamed Fawaz, the head of housekeeping at Houston Methodist.

In her response to Houston Methodist's summary-judgment motion, Lujan stated that she had brought claims against Houston Methodist for premises liability and negligence after she was injured by slipping and falling on multiple puddles of liquid while at Houston Methodist. Lujan asserted that when she fell she was an invitee of the hospital and Houston Methodist had actual knowledge and constructive knowledge of the dangerous condition that caused her injuries. Lujan attached certain exhibits to her response.

After Houston Methodist filed a reply to Lujan's response and Lujan filed a sur-reply, the trial court granted Houston Methodist summary judgment on Lujan's premises liability and negligence claims and dismissed those claims with prejudice.

## Standard of Review

We review a trial court's decision to grant summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

To prevail on a summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Once the defendant meets its burden, the burden shifts to the plaintiff,

the non-movant, to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded fact finders could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## Summary Judgment

In her sole issue, Lujan argues that the trial court erred in granting Houston Methodist summary judgment on her premises liability and negligence claims because Lujan was an invitee of the hospital and she raised "a fact question with regard[] to [Houston Methodist's] constructive knowledge/notice" of the dangerous condition that caused her injuries.

A person injured on another's property has two potential causes of action against the owner of the property: (1) a negligence claim for negligent activity on the premises and (2) a premises-liability claim for an unreasonably dangerous condition on the premises. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *Wilson v. Nw. Tex. Healthcare Sys., Inc.*, 576 S.W.3d 844, 849 (Tex. App.—Amarillo 2019, no pet.); *see also Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 163 (Tex. App.—Dallas 2011, no pet.) ("An owner or occupier of land

5

in control of the premises may be liable for two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect."). Although both liability theories are based on negligence principles, they are independent theories that require different elements of proof. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528–29 (Tex. 1997). When the alleged injury is the result of a negligent activity, the injured party must have been injured by, or as a contemporaneous result of, the activity itself. *Keetch*, 845 S.W.2d at 264; *Wyckoff*, 357 S.W.3d at 163. When the alleged injury is caused by an unsafe or dangerous condition on the premises, the injured party is limited to a premises-liability theory and must prove her status to establish the type of duty owed by the premises owner. *Wilson*, 576 S.W.3d at 849; *Wyckoff*, 357 S.W.3d at 163–64. Artful phrasing of the pleadings to encompass any other theory of negligence does not affect the application of premises-liability law. *Wilson*, 576 S.W.3d at 849; *Wyckoff*, 357 S.W.3d at 163.

In her second amended petition, Lujan alleged that she was injured when she "slipped and fell in [a] public hallway" at Houston Methodist because of "a puddle of water which had been left uncleaned by the employees and/or the contractors of" Houston Methodist. In other words, Lujan alleged that she was injured as a result of a condition of the premises and that the property itself was unsafe. To the extent that Lujan alleged in her petition that Houston Methodist was negligent in failing to

6

inspect public areas to insure that they were free from hazards, failing to maintain proper equipment, failing to properly clean public areas, failing to warn invitees and guests of hazards, and failing to prevent the creation of artificial hazards in the public spaces of the hospital, these allegations relate to Houston Methodist's purported conduct in creating, failing to warn of, or failing to correct a condition on the premises. When the plaintiff's alleged injury is the result of a condition on the premises, the plaintiff can recover only under a premises-liability theory. *See H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992); *Wilson*, 576 S.W.3d at 849–50; *Wyckoff*, 357 S.W.3d at 163; *see also Oncor Elec. Delivery Co. v. Murillo*, 449 S.W.3d 583, 592 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Brinker v. Evans*, 370 S.W.3d 416, 420–21 (Tex. App.—Amarillo 2012, pet. denied) (where claims of negligence all involved condition of road and surrounding premises, plaintiff could only bring claim under premises-liability theory and not through other negligence-based theories).

Premises liability is a special form of negligence where the degree of care or the duty that the property owner owes to the injured party depends on the status of the injured party, in relationship to the property, at the time the accident occurred. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975); *Wilson*, 576 S.W.3d at 850; *Martinez v. Houston McLane Co.*, 414 S.W.3d 219, 227 (Tex. App.—Houston [1st Dist.] 2013,

7

pet. denied). With respect to premises-liability claims, an injured person is classified as either a trespasser, licensee, or invitee.[2] *Wilson*, 576 S.W.3d at 850; *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 909–10 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Here, we first address the status of Lujan at the time the accident occurred. *See, e.g.*, *Wong v. Tenet Hosps. Ltd.*, 181 S.W.3d 532, 537 (Tex. App.—El Paso 2005, no pet.).

A licensee is a person who enters on the property of another with the owner's permission or consent and for the licensee's own convenience. *Wilson*, 576 S.W.3d at 850; *Trosclair v. McMillan*, No. 01-12-00674-CV, 2013 WL 5675900, at *3 (Tex. App.—Houston [1st Dist.] Oct. 17, 2013, no pet.) (mem. op.); *see also Wong*, 181 S.W.3d at 537 ("A licensee is a person privileged to enter and remain on the premises of another by express or implied permission of the owner, and not by any express or implied invitation.").

In contrast, an invitee enters the property of another with the owner's knowledge and for the mutual benefit of both. *See Trosclair*, 2013 WL 5675900, at *3; *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 134 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *see also Wong*, 181 S.W.3d at 537 ("An invitee is a person who enters the premise[s] of another at the express or implied invitation from the owner or occupier for their mutual benefit."). This category focuses on whether

---

[2] Neither Houston Methodist nor Lujan asserts that Lujan was a trespasser.

8

the plaintiff, as the claimant, had business relations with the owner at the time of injury that would make the plaintiff's presence of mutual benefit to the plaintiff and the owner. *Ruvalcaba*, 64 S.W.3d at 135. A person is an invitee only where the owner invites the person to enter the premises and where the person's visit involves at least a potential pecuniary profit to the owner. *Id.* Absent a relationship inuring to the mutual benefit of the plaintiff and the owner, a plaintiff is classified as a licensee. *Wilson*, 576 S.W.3d at 850; *Trosclair*, 2013 WL 5675900, at *3.

In its motion for summary judgment, Houston Methodist asserted that Lujan was a licensee. In response, Lujan asserted that she was an invitee of the hospital. The summary-judgment evidence shows that Lujan was at Houston Methodist on June 30, 2016 to visit her brother who was a patient "having open heart surgery." Lujan was not a patient or seeking treatment at the hospital. And at the time she slipped and fell, Lujan was walking in a hallway with her family members so that they could move from a larger waiting room to a smaller waiting room in the hospital where her brother's doctor could come and speak to the family. There is no evidence that Lujan was at the hospital for the purpose of conducting business with Houston Methodist or that Lujan was present for the mutual benefit of herself and Houston Methodist. *See Wilson*, 576 S.W.3d at 850; *Peerenboom v. HSP Foods, Inc.*, 910 S.W.2d 156, 163 (Tex. App.—Waco 1995, no writ) ("The difference between a licensee and an invitee is that an invitee is present for the mutual benefit of himself

9

and the owner, while a licensee is on the premises only for his own purposes, not because of any business dealings with the owner."). Instead, Lujan was present at Houston Methodist on June 30, 2016 for her own purposes. *See City of Fort Worth v. Posey*, 593 S.W.3d 924, 929 (Tex. App.—Fort Worth 2020, no pet.) (whether plaintiff is invitee or licensee depends in large part on her purpose in coming to property); *Mayer*, 278 S.W.3d at 910; *Wong*, 181 S.W.3d at 537–38 (no evidence plaintiff's visit to see her mother at hospital was for any purpose other than for plaintiff's own benefit). Thus, we conclude that Lujan was a licensee, rather than an invitee, at the time the accident occurred.[3] *See Wilson*, 576 S.W.3d at 850 (plaintiff who was at hospital to visit sick wife was licensee, not invitee); *Wong*, 181 S.W.3d at 538 (holding plaintiff who was at hospital to visit her mother was licensee, not invitee).

A property owner owes a duty not to injure a licensee by willful, wanton or grossly negligent conduct, and, in cases in which the owner has actual knowledge of a dangerous condition unknown to the licensee, the owner owes a licensee the duty to use ordinary care either to warn a licensee of, or to make reasonably safe, a

---

[3]     We are not the first appellate court to conclude that a person visiting a patient at a hospital, under circumstances similar to this case, was a licensee and not an invitee. *See Wilson v. Nw. Tex. Healthcare Sys., Inc.*, 576 S.W.3d 844, 850–51 (Tex. App.—Amarillo 2019, no pet.) (plaintiff, husband, was visiting his wife who was patient at hospital when he fell on water on floor); *Wong v. Tenet Hosps. Ltd.*, 181 S.W.3d 532, 534–35, 538 (Tex. App.—El Paso 2005, no pet.) (plaintiff was visiting her mother who was patient at hospital when plaintiff fell outside hospital).

dangerous condition. *Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 385 (Tex. 2016). A property owner is liable to a licensee only if the owner has actual knowledge of the condition that injured the plaintiff. *Wilson*, 576 S.W.3d at 850; *Wong*, 181 S.W.3d at 537. In order to establish liability, a licensee must prove: (1) a condition of the premises created an unreasonable risk of harm to the licensee, (2) the owner had actual knowledge of the condition, (3) the licensee did not have knowledge of the condition, (4) the owner failed to exercise ordinary care to protect the licensee from danger, and (5) the owner's failure was a proximate cause of injury to the licensee. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992); *Wilson*, 576 S.W.2d at 851.

To prove actual knowledge, the licensee must show that the owner actually knew of a dangerous condition at the time of the accident. *City of Corsicana v. Stewart*, 249 S.W.3d 412, 413–15 (Tex. 2008) ("Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time."). The licensee must show that the owner actually knew of the dangerous condition at the time of the accident, not merely of the possibility that the dangerous condition could develop over time. *See Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010); *Wilson*, 576 S.W.3d at 850. In determining whether an owner had actual knowledge of a

dangerous condition, "courts generally consider whether the premises owner ha[d] received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008); *Sampson*, 500 S.W.3d 392. "Lack of notice of similar accidents from third parties, however, does not conclusively negate actual knowledge." *City of Irving v. Seppy*, 301 S.W.3d 435, 444 (Tex. App.—Dallas 2009, no pet.). "Actual knowledge of an unreasonably dangerous condition can sometimes be proven through circumstantial evidence." *Id.* Circumstantial evidence establishes actual knowledge only when it "either directly or by reasonable inference" supports that conclusion. *See State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002); *see also City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 537 (Tex. 1996).

In its motion for summary judgment, Houston Methodist conceded that Lujan "slipped and fell on . . . a wet substance" at the hospital, but it argued that it was entitled to judgment as a matter of law because Lujan was a licensee and she could not show that Houston Methodist had actual knowledge of the dangerous condition that purportedly caused her injuries. In other words, Houston Methodist could not be liable for something it did not know about.

The summary-judgment evidence establishes that Lujan was at Houston Methodist on June 30, 2016 to visit her brother, a patient who was having surgery. Lujan was initially in a larger waiting room with her family members while her

12

brother was having surgery.  At some point around 8:00 a.m. or 8:30 a.m., Lujan and her family members were asked to move to a smaller waiting room in the hospital where Lujan's brother's doctor could come and speak to the family.  Thus, Lujan and her family members walked down a busy hallway.  Lujan did not make it "too far" down the hallway before she slipped and fell.  According to Lujan, she fell because of a clear liquid on the floor.  The liquid on the floor had no smell.  When asked "[h]ow big of a spot was it," Lujan stated that it was "droplets," "[s]everal little droplets" about the size of a dime or a quarter.  Lujan did not see the liquid on the floor before she fell because it blended in, but after she fell, a portion of her pants and her clothing near her shoulder area were wet.  While on the ground, Lujan noticed a droplet by her shoulder and another at her feet.  A nurse helped Lujan into a wheelchair.  The nurse then "told somebody to go get a sign and clean it up."  The nurse also asked other staff members if they had seen the liquid on the floor, but no one responded that they had seen the liquid before Lujan fell.

Lujan, in her deposition testimony, stated that she did not know how long the droplets had been on the floor.  She also did not see anyone spill anything in the hallway, anyone else slip on the droplets, anyone from housekeeping in the hallway, or any "wet floor" signs in the hallway.  (Internal quotations omitted).  After Lujan's fall, no one told her:  "I saw how that liquid got on the floor.  I know how it got there."  (Internal quotations omitted.)  And no one from Houston Methodist ever told

13

Lujan that they "knew how long [the droplets] had been" on the floor or that they had seen the droplets at all.

Fawaz, the head of housekeeping at Houston Methodist, testified in his deposition that the front-line housekeeping employees at Houston Methodist are tasked with cleaning patient rooms and hallways. Generally, during the daytime shift, i.e., from 7:00 a.m. to 3:00 p.m., there are 125 to 150 front-line housekeeping employees working, but they cannot be in every place at once. The front-line housekeeping employees are assigned to certain areas in the hospital during their shifts, and they tend to check hallways in nursing units and patient areas every hour or hour and a half for any cleaning needs.[4] There is also a telephone number that other Houston Methodist personnel can call to make requests for housekeeping. A front-line housekeeping employee is supposed to respond to a service request within five to ten minutes.

In regard to June 30, 2016, the day that Lujan fell at Houston Methodist, Fawaz stated that he was not aware of any evidence that someone from housekeeping was in the area when Lujan fell or that someone from housekeeping knew about the liquid that Lujan slipped on. If Fawaz had received a call on June 30, 2016 about a spill not being cleaned up promptly, he would have gone directly to the spill himself.

---

[4] Cleaning needs could be a piece of paper on the floor, an overflowing trashcan, the presence of dust, or a spill on the floor.

14

Neither Fawaz's testimony nor any other summary-judgment evidence shows that Houston Methodist had actual knowledge of the droplets on the floor in the hallway on which Lujan slipped and fell.

Based on the foregoing, we conclude that Lujan has not raised a genuine issue of material fact that Houston Methodist was actually aware of the presence of the liquid on the floor on which Lujan slipped and fell. Thus, we hold that the trial court did not err in granting Houston Methodist summary judgment.

We overrule Lujan's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Julie Countiss
Justice

Panel consists of Justices Kelly, Goodman, and Countiss.